Barclay, J.
We adopt substantially the statements of the plaintiff in this court as giving a fair outline of the controversy.
The action was instituted in the circuit court of Jasper county, August 16, 1892.
The plaintiff, in his petition, claimed that in. June, 1892, he was the owner of certain land in said county; and also the owner of twenty-seven acres of wheat, twenty acres of oats, and thirty-three acres of corn and potatoes, standing and growing upon said premises; and that afterward the defendant wrongfully took said crops and severed the same from said land and converted them to his own use, to plaintiff’s damage in the sum of $700, for which he prayed judgment.
The defendant’s answer consisted, first, of a general denial; second, statement that in August, 1891, he rented said premises from Seth Shoemaker, for a term ending September 1, 1892, and in October, 1891, paid Shoemaker the full amount of rent due under his lease for said term.
A trial was had by the court, without the intervention of a jury, and resulted in a finding and judgment for defendant. In due time plaintiff filed a motion for a new trial, which being overruled, he brought the ease to this court by appeal.
The facts disclosed on the trial are substantially as follows:
August 1, 1888, James S. Shoemaker (sometimes called “Seth” Shoemaker) was the owner of the land referred to, and executed a deed of trust (duly recorded) conveying said land to George W. Toms, as trustee, to secure a note of $1,000, payable to the Mutual Benefit Life Insurance Company, of Newark, New *129 .Jersey, with interest from the date of said trust deed, evidenced by interest coupons. The latter, amounting to $30 each, represented semiannual interest on the principal debt. They were payable on the first days of April and October of each year following the date of the trust deed. The deed required the mortgagor and his assigns to pay all taxes assessed against the land as hereinafter mentioned.
It was further provided that, in default of compliance with any of the covenants of the deed, the whole debt might (at the option of the holder of the indebtedness secured) become due, and a sale of the mortgaged premises might then be had, after due advertisement of said sale for thirty days in a newspaper published in the county where the land lay.
It was stipulated that, in event of the absence, death, resignation, etc., of the trustee, the sheriff of Jasper county should become successor in trust, and perform all the duties of trustee.
Default was made in the payment of taxes for the years 1890 and 1891, and in the payment of the interest coupon, maturing April 1, 1892. Toms, as trustee, resigned his trust, and the sheriff of Jasper county, acting as trustee (at the request of the legal holder of said note and coupons), advertised the property for sale in Labor’s Tribune, a weekly newspaper published in said county, the day of sale being therein fixed as the eighteenth day of June, 1892. The advertisement appeared in said paper as follows: May 19, May 26, June 2, June 9, and June 16, 1892, being the regular issues of said paper.
The advertisement (as well as the deed made by the sheriff) declared that the sale was occasioned by the default in the payment of taxes for 1890 and 1891, and of the interest coupon which fell due April 1, 1892, and the consequent maturity of the whole debt.
*130 June 18, 1892, the property was sold by the sheriff, acting as trustee, and purchased by plaintiff, to whom a deed in regular form was executed. The trustee’s deed recites, among other things, that the notice of sale was advertised for thirty days; but attached to the trustee’s deed was a proof of' publication, which omitted to show that the notice was published on May 16. The first insertion named in the proof of publication is of May 26. It was, however, shown on the trial, by the testimony of the publishers of the paper, and also by the files introduced in evidence, that the notice of sale was published on May 19, and in each issue of the paper, thereafter until the sale, including June 16, 1892.
At the time of the purchase by the plaintiff, at trustee’s sale, there were standing and growing on the premises the crops in controversy, mentioned in the petition. As soon as plaintiff purchased the land, he notified defendant not to remove the crops; that they belonged to plaintiff. Defendant disregarded this notice, and, before yielding possession, cut and appropriated the crops within a short time after the sale and refused to pay plaintiff .anything therefor. The crops were worth about $500.
It was shown by the defendant, that, on October 6, 1891, he had leased the premises from Seth Shoemaker (the mortgagor) for a term of one year, dating from September 1, 1891, for the sum of $235, and that he had paid the agreed rent in October, 1891, to Shoemaker, as alleged in the answer. The lease was in writing, and contained a privilege for a renewal for another year, if the lessor did not move on the property.
The deed of trust, after requiring the mortgagor and his assigns to pay interest, etc., and after providing that, for noncompliance with any of its requirements, the property should be sold, contains this clause;
*131 “And until sale made as aforesaid, it shall be permitted to the said party of the first part” (Shoemaker) “his heirs and assigns, to occupy all of the real estate as aforesaid, as the tenant of the. party of the second part, or his successors in trust, in consideration thereof paying all taxes levied or assessed upon said premises.”
The trial court held that under this clause, in view of the other facts, plaintiff could not recover the value of the crops growing on the premises at the time of the sale, and which defendant cut before quitting possession. It was also held that the sale under the deed of trust was valid, and gave title to the land to the plaintiff.
These two rulings constitute the chief points submitted on this appeal. The defendant insists that the sale was not advertised by the trustee as required by the deed of trust, and that, consequently, plaintiff acquired no title, either to the land, or to the crops thereon at the time of sale. The plaintiff maintains the converse proposition.
There are some minor questions in the case which will be stated in connection with our comments on them.
1. Plaintiff’s rights depend in part on maintaining his claim of title to the land through the sale by the trustee. If that sale is invalid, no title passed to plaintiff.
The trial court, by instruction, ruled that the publication or advertisement was sufficient under the terms of the deed of trust. But the result of the circuit judgment would still be correct, if defendant’s contention on that point were now held good, and it were determined that the title to the land did not pass to plaintiff by the sale, whatever the court’s view might be on the other branch of the case.
*132 In this condition of the record we hold that the title to the real estate is involved in the action, within the meaning of the constitution, defining the jurisdiction of the supreme court. Const. 1875, art. 6, sec. 12.
2. The question whether title was conveyed by the trustee’s sale depends on whether the published notice complied with the demands of the instrument giving the power of sale. No other point of criticism on the proceedings of the trustee is made.
The deed of trust provided for a sale by the trustee, “after having advertised such sale thirty days in a newspaper,” etc.
The advertisement of the sale to oceur June 18, 1892, was published in a weekly newspaper of the county, once in each edition, beginning May 19, and ending June IB, 1892.
Under our positive law, “the time within which an act is to be done shall be computed by excluding the first day and including the last” except when the last day is Sunday, a contingency with which we need not concern ourselves in the case at bar. R. S. 1889, sec. 6570. That statute applies by its terms to the construction of the written law, where no other intent is manifested. But we think it should also be held to establish a convenient canon for the interpretation of contracts, where no different meaning is exhibited by the instrument to be construed.
The subject of computation of time for the performance of public and private acts, affecting the rights of parties, is one which has furnished occasions for the expression of widely varying opinions among judges. 26 Am. and Eng. Encyclopedia of Law. p. 3. The Missouri rule above quoted was adopted to aid in solving some of the difficulties of that subject, so far as they arose from the language of legislation; and we *133 consider that the advantage of having some fixed guide, to solve like difficulties growing out of the dealings of individuals, commends the extension of the statutory rule to the reading of instruments such as that before us now.
In Hahn v. Dierkes (1866), 37 Mo. 574, the sufficiency of a mechanics’ lien was questioned and the court held that a notice thereof given on the fifteenth was good “ten days’ notice,” of an action begun on the twenty-fifth of the same month.
A similar view of the law of computation was applied in Bank v. Stumpf (1880), 73 Mo. 311, in which a published notice, begun September 22, for a trustee’s sale, October 23, was held sufficient, where the deed of trust required thirty days’ notice of the sale.
In the latter case the omission of publication on certain intermediate days (when the newspaper did not appear) was held to constitute no defect in the notice. That opinion likewise approved and cited White v. Malcolm (1859), 15 Md. 529, in which the effect of publication in a weekly newspaper was involved, as in the case at bar.
Here the publication was made in all the issues of the newspaper from the first appearance of the advertisement until the sale. The first appearance was thirty days before the sale, according to the rule of computation already quoted, which we think should be applied.
We consider that the Missouri cases above cited should be adhered to closely on such a question as this. Any departure from such rulings would probably create uncertainty and doubt in respect of many proceedings on which titles and judgments rest. On this topic we need not repeat the remarks recently made in Cruzen v. Stephens (1894), 123 Mo. 337 (27 S. W. Rep. 557), in *134 regard to the rule of stare decisis as applied to the publication of notices.
3. No reply was filed by plaintiff to the new matter in the answer. But the cause was tried by the parties on the circuit as if the allegations of new matter had been denied. Had the defendant intended to insist on the admission of those allegations as facts, on account of the omission to deny them, he should have taken that stand and announced dt in the trial court. The adverse party could then, at once, have supplied the omission, on getting leave of court so to do. But, instead, the defendant went into a trial as though the new matter had been put in issue. At the present stage of the action, defendant must abide by that course. Henslee v. Cannefax (1872), 49 Mo. 295.
4. There was an omission in the printer’s affidavit (accompanying the trustee’s deed as an exhibit) to recite the proper and sufficient publications of notice of the sale. Eor that reason it is urged that the sale is invalid. The affidavit omitted to recite the first publication of the notice; but the trustee’s deed itself was correct and strictly formal. It stated that thirty days’ notice of the sale had been given, particularly following the language of the deed of trust. These recitals were supplemented at the trial with ample proof to the effect that the first publication, May 19,1892, had been duly made, exactly the same as the other published notices. The neglect of the printer to correctly mention in his affidavit all the publications (which were in fact given) can not justly be held to vitiate the sale.
5. It is further insisted that the sale is void because the deed of trust required it to be held, “at the door of the courthouse in the county where the premises are situate,’’ and the county (Jasper) had two courthouses at the time of the sale; one at Carthage *135 and the other at Joplin. The sale in this ease was made at the courthouse in Carthage, the county seat; and we consider that it was valid as a compliance with the requirement on that point.
6. The chief contention to support the present appeal is that the trial court erred in its ruling as to the defendant’s right to the growing crops.
The court indicated its view on this point by giving the following declarations of law at the instance of defendant, namely:
1. “The court declares the law to be that, under the terms of the deed of trust from Shoemaker, under which plaintiff claims, Shoemaker, his heirs and assigns became the tenants of the trustee therein, and were to pay as rental the taxes on the land, and that Gray, if he acquired any title by the trustee’s deed, holds the same relation to Shoemaker and his assigns that the trustee held, that is, landlord of Shoemaker and his assigns, and that defendant, having rented from Shoemaker prior to the sale became a tenant of the trustee under the terms of the deed of trust; and an action for the conversion of the crop raised by him on said land will not lie in this case, and the finding should be for the defendant.”
2. “The court declares the law to be that by the terms of the deed of trust read in evidence, until sale, Jas. S. Shoemaker was the tenant of the trustee named in said deed and his successor in trust, and that defendant as under-tenant of Shoemaker was entitled to take and carry away the annual crops sown by him and growing on the premises conveyed, at the time of sale.”
Plaintiff excepted to these declarations, and insists now that they were erroneous.
It is a peculiarity of the deed of trust under review that it expressly provides that the mortgagor should *136 become tenant of the trustee from the date of the instrument until any sale thereunder.
Whatever the purpose of this stipulation may have been, it had the undoubted effect to give the mortgagor, and those holding under him, the benefit derived from the relation of landlord and tenant with reference to the right to emblements. The estate of defendant having been terminated before the efflux of its full term, by means of the sale already mentioned, (which occurred without any default on his part), brings the defendant within the protection of the general rule as to the right to growing crops between landlord and tenant. The defendant had paid in advance his rent in full to September following the sale, and the termination of the estate, June 18, 1892, occurred through no fault of his. He had not assumed any of the obligations to pay the principal debt secured. He was a mere tenant of the original debtor. He came lawfully into possession of the premises, and severed the crop before he gave up the possession.
The Missouri decisions in regard to various conflicting rights to growing crops we shall not find it necessary to review in this case. The relations of the parties created by the tenancy clause of the deed now in question make such a review unnecessary.
We shall not undertake to define the precise classification of the tenancy which the deed of trust established. Whatever the duration of that tenancy, it is clear, from the language defining it, that the landlord’s assent was given to the assignment or transfer of the possession. So defendant’s holding was lawful.
It is also plain that, until the creditor secured by the deed of trust elected to resort to the land, and thus enforce his security, the principal debtor might, at any time, by making the proper payments according' to his agreement in the deed, have cured any prior *137 default. Having accepted payment of rent from Mr. Worst to September, 1892, he was in duty bound to make those payments to preserve to his tenant the possession to which the rent gave the tenant’ right as between themselves. •
When the creditor exercised his option to proceed, and to assert his paramount claim, the termination of the subtenant’s term, which thus resulted, came strictly within a rule of the law of emblements which we have transplanted from the English system, and which yet remains in effect as part of the great body of jurisprudence derived from that source. (R. S. 1889, sec. 6561.)
The rule on this point is stated by one of the text-writers on the law of landlord and tenant as follows:
“But although no indulgence is given in such cases to tenants themselves, it has been extended to (under-tenants who have not participated in destroying the estate. Where, therefore, a tenant for years, whose lease depended on a certain condition, underlet the land, and his under-lessee sowed corn, and afterward the first tenant broke the condition, and so forfeited the lease, by means of which they were all ousted — the under-tenant was, nevertheless, allowed to enter and cut the corn when it was ripe.” Taylor, Landlord & Tenant [8 Ed.], (1887) sec. 536.
The case at bar does not require us to go quite so far as the general rule just quoted, and we certainly do not purpose to extend our ruling beyond the facts in judgment. Here there is no question of any right to re-enter. The tenant reaped his crop while in possession, and before surrendering to the purchaser at the trustee’s sale. The action does not deal with any other question than the contested right to recover for the crop so harvested by the person whose industry planted it.
*138 On that state of facts, we feel no doubt in holding that the value of the crops, so secured by the tenant, can not be recovered from him by the purchaser under the trustee’s title. The case seems to us to fall clearly within range of the sound principles of' policy which give reason to the law of emblements.
It is unnecessary to closely scan the instructions given by the court, already quoted. On the facts disclosed by plaintiff’s own documentary -evidence and personal testimony, he had no ground of recovery, and the finding thereon should have been for the defendant. In that state of the case, any error in the declarations of law leading to a verdict for defendant should be held harmless.
The judgment of the learned trial judge was obviously for the right party. It should therefore be affirmed. (R. S. 1889, see. 2100). It is so ordered.
Brace, C. J., and Macearlane, J., concur. Robinson, J., concurs in the result.