EDWIN WITHERS et al., Executors, etc., Respondents, v. WABASH RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, January 14, 1907.

1. **TRIAL PRACTICE: Filing Contract: Completing Petition.** A motion to require plaintiffs to complete their petition by filing a certified copy of the contract sued on with the map mentioned therein is held properly overruled since the code does not require the filing of a contract executed by both parties.

2. **JURISDICTION: Court of Appeals: Title to Land.** Though the title to land be incidentally, collaterally or necessarily inquired into at the trial for the purpose of settling the issues involved, yet if the judgment rendered by the trial court can be satisfied by the payment of money without affecting the title of real estate, the appeal is to the Court of Appeals and not to the Supreme Court.

3. **PLEADING: Petition: Tendering: Issue: Contract.** The test of a good pleading is that it contains a statement of the party's cause of action sufficiently certain to notify his adversary of the charge he is to meet, since every fact the proof of which is necessary to recover, must be stated and the omission of an essential averment is not cured by verdict; and the petition set out in the opinion is held insufficient because it does not allege what lands the plaintiffs' assignor owned that were covered by the contract sued upon and likewise what lands plaintiffs owned that were affected by said contract.

4. **CONTRACT: Covenant: Running With Land: Drainage Ditch.** A contract between a railroad and the adjoining proprietor relating to a drainage ditch is construed and held to constitute a

covenant running with the land and that there is privity be-tween the proprietor and the defendant railroad company since the covenants were mutual, in perpetuity and irrevocable except by agreement of the parties and their successors, and went to the profitable enjoyment by the covenantees of their lands and ceased to be valuable when they parted with the title.

Appeal from Clay Circuit Court.—*Hon. Joshua W. Alexander,* Judge.

REVERSED AND REMANDED.

*J. L. Minnis* and *D. C. Allen* for appellant.

(1) The circuit court erred in overruling appellant's motion to compel respondents to complete their amended petition in the particulars indicated in the motion. (2) The circuit court erred in overruling appellant's demurrer to the amended petition for many reasons, of which the following may be stated, viz.: Its facts alleged were insufficient to constitute a cause of action. It does not state what land was covered by the contract of January 16, 1893, nor what portion of the land covered by the contract had been assigned to Edwin Withers and Conn Withers, the original plaintiffs in the cause. Every constitutive fact must be stated. Huston v. Tyler, 140 Mo. 252; Pier v. Heinrichofen, 52 Mo. 333; Lanitz v. King, 93 Mo. 513; Edens v. Railroad, 72 Mo. 212; Story v. Ins. Co., 61 Mo. App. 534; Mfg. Co. v. Jones Co., 60 Mo. App. 219. (3) A petition to be a good one must allege every fact which goes to constitute a legal cause of action, such that, if the allegations be proven and found by the court or jury and a judgment rendered thereon, such judgment will be an estoppel — *res judicata* — against a second action on the same cause of action. 1 Chitty on Pleading (13 Am. Ed.), pp. 408, 603, 604, note c; Edgell v. Sigerson, 26 Mo. 583; Brown v. Railroad, 96 Mo. App. 169; Jones v. Silver, 97 Mo. App. 239; State ex rel. v. Branch, 134 Mo. 603; 1 Green-

leaf on Evidence (15 Ed.), p. 665, sec. 28; 1 Black on Judgments (1 Ed.), sec. 242. (4) The covenants of the alleged contract of January 16, 1893, sued on in the amended petition, were purely personal, as appears from said petition, between Lincoln and Riley and appellant, and do not run with the lands meant by it. The principle of policy applied to affirmative covenants applies, also, to negative covenants. They must touch or concern or extend to the support of the thing conveyed. They must be for the benefit of the estate. This case, as is well known, is the leading one in the discussion of all covenants running, or not, with the land. It will be noted that, in Spencer's case the covenant was to build a brick wall on part of the land demised. Hogan's Heirs v. Welcker, 14 Mo. 177; Leitensdorfer v. Delphy, 15 Mo. 160; Norcross v. James, 140 Mass. 192; Canal Co. v. Penn. C. Co., 8 Wall. 276; Railroad v. Railroad, 135 U. S. C. C. 576. The statute of 32 Henry 8, cap. 34, is in force in Missouri by virture of section 4151, R. S. 1899; Vyvan v. Arthur, 1 Barn. & Cress. (Am. Ed.), 113; Webb v. Russell, 3 Term. 393; Spencer's Case, 5 Coke 29.

*Martin E. Lawson* for respondents.

(1) This contract was not in the possession of respondents as stated in said amended petition. Nor was it necessary to file it if it was in their possession. It is only papers signed by the adverse party that the statute requires to be filed. R. S. 1899, sec. 643; Campbell v. Wolff, 33 Mo. 459; Carr v. Weldron, 44 Mo. 393; Bowling v. Hax, 55 Mo. 446; Kelly v. Thuey, 143 Mo. 436. (2) Hence the petition clearly states that the land of plaintiffs is part of the land for the benefit of which the contract alleged, was made. If the appellant thought it too vague, its remedy was not a demurrer but a motion to make it more definite and certain. Hirsch v. Grand Lodge, 56 Mo. App. 101; MacAdam v. Scudder, 127 Mo. 345. (3) This brings us to the only point

in the case raised by the demurrer. Was the benefits provided by the contract such as to constitute covenants running with the land? The circuit court decided that they were. We do not care now to discuss Coke or Touchstone but to cite some modern authority bearing on the question at issue. This contract did not create rights purely personal. Poage v. Railroad, 24 Mo. App. 199; Coughlin v. Barker, 46 Mo. App. 61; Fitzpatrick v. Mik, 24 Mo. App. 435; Lawrence v. Hennesy, 165 Mo. 670; Stillwell v. Railroad, 39 Mo. App. 229. And the right to insist upon this ditch being maintained is not affected by subdividing the land. 2 Washburn, Real Property (3 Ed.), p. 284; Hickey v. Railroad, 23 L. R. A. 401. (4) There is privity of contract and interest here. "Privity" is merely successive relationships to the same rights of property. 23 Am. and Eng. Ency. of Law (2 Ed.), 101; State ex rel. v. St. Louis, 145 Mo. 567; Crispen v. Hannavan, 50 Mo. 418.

BROADDUS, P. J.—As the judgment was rendered upon the refusal of the defendant to further plead after its demurrer to plaintiffs' petition was overruled, it is necessary to a proper understanding that one of the two counts to the petition should be copied in full. The first count reads as follows:

"Plaintiffs for their first cause of action in this their amended petition, state that the defendant is now, and at all times hereinafter mentioned was, a railway corporation, duly organized and existing under the laws of the State of Ohio; that defendant now owns and operates, and did at all said times own and operate a railroad over and through section No. twenty-seven (27), in township fifty-one (51), of range No. thirty-one (31), in Clay county, Missouri; that plaintiffs own land adjoining and near to said railroad right of way in said section, and have owned same as herein stated.

"Plaintiffs further state that on January 16, 1893,

James E. Lincoln and James T. Riley, owned and were in possession of land in said section, near said railroad; that said land was being damaged by water overflowing from Rush creek, and by surface water, which had been diverted from the natural channels in which it would have flowed, by reason of the embankments of said railway; that on said January 16, 1893, said defendant and said Lincoln and Riley, made a contract by which said railroad defendant agreed to construct and maintain a ditch along the side of its railroad, for the benefit of said Lincoln and Riley, their heirs, successors and assigns, they to release defendant from damage caused by the diversion of the original channel of Rush creek, or on account of any water backing upon or overflowing said land through or on account of said ditch after it was constructed. A copy of said contract is hereto attached, marked 'A,' and here referred to in full, the original not being in plaintiffs' possession.

"Plaintiffs state that defendant did partially construct said ditch, but has failed or neglected and does now fail and neglect to maintain the same; that said ditch has for more than two years past been filled and blocked with dirt, sand and rubbish, so that it did not carry away the water running to it; that plaintiffs are the owners of part of the land then owned by James E. Lincoln and James T. Riley, and for the benefit of which said contract was made and said ditch constructed, which land they hold as assignees of said Lincoln and Riley, and to whom as such, defendant owes the contract duty of maintaining said ditch.

"Plaintiffs state that said ditch when constructed did drain said land but cannot now do so because it has not been maintained, through the carelessness and negligence of defendant, although it has often been notified of the bad state of repair of said ditch, and although often requested to repair it, and although it has been so out of repair for so long a time as that by the ex-

ercise of reasonable diligence alone it must have known of the bad condition thereof; that by reason of the failure to clean and maintain said ditch, the land so held as assignees of said Lincoln and Riley was overflowed and plaintiffs' corn crop destroyed, and they were prevented from planting said ground, and they were damaged in the year 1903, by the destruction of twenty acres of corn and inability to plant same, which land was reasonably worth five dollars per acre, or the sum of one hundred dollars.

"Therefore plaintiffs pray judgment for one hundred dollars, their damage aforesaid with costs of suit."

The second count of the petition reads the same as the first, but asks judgment for damages in year 1904. Exhibit "A" is as follows:

"This agreement, made and entered into on this sixteenth day of January, A. D. 1893, by and between the Wabash Railroad Company, party of the first part, and James E. Lincoln and Maggie B. Lincoln, his wife, and James T. Riley and May Riley, his wife, of Clay county, Missouri, parties of the second part.

"Witnesseth: That whereas, the lands owned by said second parties in the vicinity of the railroad of said first party, in Clay county, Missouri, have been overflowed for several years by water, backing up upon it from the overflow from the channel of Rush creek in time of high water.

"And whereas, it is proposed by said first party to construct a ditch as soon as practicable and maintain the same along side of its present line of railroad across the lands of said second parties, as shown by a map or tracing thereof, hereto attached, and made a part of this agreement:

"And whereas, in consideration of the construction and maintenance of said ditch, by said first party, as aforesaid, said second parties hereby acting for themselves, their heirs, successors and assigns, have agreed

to release said first party and its successors and assigns from any and all claims which said second parties now have, or may hereafter have, against said first party, or its successor, successors or assigns, on account of its diversion of the original channel of Rush creek, or on account of any water from any source at any time backing upon or overflowing said lands of said second parties, through or on account of said ditch after the same is constructed under this agreement.

"Now therefore it is understood and hereby agreed, by and between said parties hereto, that in consideration of and maintenance, as soon as practicable by said first party, of said ditch, hereinbefore described, upon and across the lands of said second parties, in Clay county, Missouri, that said second parties, their heirs, administrators, successor, successors and assigns, will, and do by these presents, hereby forever release said first party and its successor, successors and assigns, from any and all claims of any sort or nature whatever, which said second parties, or their heirs, administrators, successors or assigns, now have, or may hereafter have, on account of the diversion of the original channel of Rush creek or on account of any water from any source, or at any time, backing up upon or overflowing said lands of said second parties, through or on account of said ditch, after the same is constructed under this agreement."

The contract contained in Exhibit "A" was not filed with the amended petition, but was attached to the original petition, as we understand the record. As the contract so filed referred to a certain map or tracing which was not filed with either the original or amended petition, the defendant filed a motion to require plaintiffs to complete their amended petition by filing a certified copy of the contract with the map mentioned. This motion the court overruled, and we think properly, as the

code does not require the filing of contracts executed by both parties. [Sec. 643, R. S. 1899.]

The defendant then filed a demurrer to the petition on the ground that it did not state a cause of action and specified several reasons in support thereof, among which are the following:

"Because it is not alleged what lands were owned by the parties of the second part in the contract of January 16, 1893, which were covered by the terms of said contract.

"Because it is not alleged what are the lands, owned by said second parties to said contract and covered by said contract, whereof the plaintiffs in this cause have become the assignees and are now the owners.

"Because, if said plaintiffs have become the owners or assignees of any part of the lands covered by the said pretended contract, they did not acquire any right, title or benefit in or from said contract.

"Because whatever benefits, interests or rights the parties of the second part acquired in or to said contract and by virtue of its provisions, the said same were not assignable.

"Because there is no privity between the parties to said contract and the defendant which could inure to the plaintiffs.

"Because the covenants contained in said contract did not run with the lands covered by it."

Before proceeding to discuss the merits of the demurrer, it is necessary first to dispose of defendant's motion to transfer the case to the Supreme Court on the alleged ground that the title to real estate is involved. The defendant has offered no sufficient reason to support its motion and the authorities it has called to the attention of the court, on the contrary, hold that in such cases the title to real estate is in no way involved. In Price v. Blankenship, 144 Mo. 203, it is held: "Before

122 App—19

appeals can be entertained by this court on the ground that title to real estate is involved, it must appear that the title to the real estate will in some way be directly affected by the judgment to be rendered in the case. Though the title may be incidentally, collaterally, or necessarily inquired into at the trial, for the purpose of settling the issues involved, yet if the judgment rendered by the trial court can be satisfied by the payment of money without affecting the title to the real estate, the appeal is to one of the Courts of Appeals." (Overruling Gray v. Worst, 129 Mo. 122.) See also Lawson v. Hammond, 191 Mo. 522. There can be no judgment rendered in this case that will affect the title to the real estate mentioned in the petition. The cause of action is for an alleged violation of a contract and asking judgment for damages on account of such violation. There can be no judgment except for money. The motion for transfer will therefore be overruled.

The demurrer should have been sustained because the petition does not allege what lands James E. Lincoln and James T. Riley, the plaintiffs' assignors, owned that were covered by the contract in suit. And the petition further fails to state what lands they own that were owned by said Lincoln and Riley to which said contract pertained. One of the tests of a good pleading is that it must contain a statement of the party's cause of action or defense with sufficient certainty to notify his adversary of the charge he is to meet. In other words, the allegations, if denied, should make a traversable issue. The petition in this respect mentioned falls far short of the test. "The fundamental requirement of good pleading whether under the code or at common law, is that the petition must be so drawn as to tender a definite issue or issues, and not so obscure as to require the defendant to grope in the dark to discover what the meaning of the pleading is." [Huston v. Tyler, 140 Mo. 252.] "Every fact, proof of which is essential to a

recovery by the plaintiff, must be stated in the petition, otherwise it will be fatally defective; the omission of an essential averment not being cured by the verdict. And facts must be stated as distinguished from conclusions of law." [Story v. American Central Ins. Co., 61 Mo. App. 534.] The principle is too well settled to necessitate the multiplication of precedents to sustain it.

The other objections to the petition, that there is no privity of contract in the parties to the suit and that the covenants do not run with the land, may be treated together. The covenants in the contract are to Lincoln and Riley, their heirs, successors and assigns, in consideration that they release defendant from damage caused by the diversion of the waters from the original channel of Rush creek. "It has been adjudged, that where two co-parceners made partition of land, and the one made a covenant with the other, to acquit her and her heirs of a suit that issued out of the land, the covenantee aliened, in that case the assignee shall have an action of covenant, because the acquittal did run with the land." [2 Coke 247.] And in connection with this statement of the law that, "There is a diversity between a warranty that is a covenant real, which bindeth the party to yield lands and tenements in recompense, and a covenant annexed to the land which is to yield but damages, for that a covenant is in many cases extended further than the warranty." The appellant has cited Vyvyan v. Arthur, 1 Barn. & Cress. 411, as authority for its contention, but we think that it supports the theory that the covenants here run with the land. In applying the law to that case, BEST, Judge, said: "The general principle is, that if the performance of the covenant be benficial to the reversioner, in respect of the lessor's demand, and to no other person, his assignee may sue upon it; but if it be beneficial to the lessor, without regard to his continuing the owner of the estate, it is a mere collateral covenant, upon which the assignee

cannot sue. I think that the performance of the covenant in this case, in the events that have occurred, would always have been beneficial to the owner, and therefore, that it is a covenant which runs with the land." In Webb v. Russell, 3 Durnford & East 393, decided in 1789, was a case where, "If a mortgagor and mortgagee make a lease, in which the covenants for the rent and repairs are only with the mortgagor and his assigns, the assignee of the mortgagee cannot maintain an action for the breach of these covenants, because they are collateral to his grantor's interest in the land, and therefore do not run with it. Norcross v. James, 140 Mass. 188, was a suit in equity to enforce a negative covenant. The court held: "The principle of policy applied to affirmative covenants applies also to negative ones. They must touch or concern or extend to the support of the thing conveyed." And that, "The covenant under consideration, as it stands on the report, falls outside of the limits of this rule, even in the narrow form."

This court has declared what is a collateral covenant, viz.: "A collateral covenant is such as appears to be foreign from the instrument, not touching the land or its value, or the value of its reservation, or of the term, but a distinct matter put in by the parties, which does not appear necessarily to influence the demise or grant." And also tells what a dependent covenant is, viz.: "But a *dependent* covenant is such as requires something to be done or omitted which represents the theory on which it depends; in such cases it becomes appurtenant and runs with the land." [Poage v. Railway, 24 Mo. App. 199.] See also Coughlin v. Barker, 46 Mo. App. 54. And: "Privies are those who have successive relationship to the same right of property or subject-matter, such as personal representatives, heirs, devisees, legatees, assignees, voluntary grantees, or judgment creditors or purchasers from them with notice of the fact." [State ex rel. Subway Co. v. St. Louis, 145

Mo. 551.] In Crispen v. Hannavan, 50 Mo. l. c. 418, it is held that, "Privity denotes mutual or successive relationship to the same rights of property."

The defendant covenanted with the plaintiffs' assignors to construct and maintain a ditch alongside of its line of railroad across their lands in consideration that they, their heirs and successors release it from all claims which they had, or may hereafter have against defendant, its successor, or successors, or assigns on account of its diversion of the waters from the original channel of Rush creek. The duty imposed by the contract was a continuing one on the defendant and its successors to maintain said ditch and a corresponding duty rested upon Lincoln and Riley, their heirs, successors and assigns to forbear for the future to claim damages from defendant and its successors by reason of the obstruction of said creek. The covenants were mutual, in perpetuity and irrevocable, except by agreement of parties or the death of the defendant corporation without a successor.

The defendant's covenant went to the profitable enjoyment by the covenantees of their land and ceased to be valuable to them when they parted with their title, which, under the authorities noted, creates a covenant that runs with the land. And under all the authorities plaintiffs are privies to the contract. We find no precedent in any authority, ancient or modern, that in our opinion can be said to maintain the contention that the covenant in suit does not run with the land. Spencer's case, so much relied on by appellant, does not in the least support its view of the law. The question there arose on a construction of a statute enacted during the reign of Henry VIII. concerning leases. The conclusion of the court was, that as the statute related to covenants that run with the land, the action would not lie as the covenants were only collateral, which do not run with

. the land. [5 Coke Rep., p. 16 (Thomas and Frazer's Ed., p. 29).]

For the defect noted, the cause is reversed and remanded in order that the plaintiffs may amend their petition. All concur.