[No. 15286.  Department One.  September 24, 1919.]

FRANK SCHELLER, *as Administrator, etc., Appellants,* v. TACOMA RAILWAY & POWER COMPANY, *Respondent.*[1]

COVENANTS (11) — RAILROADS (18) — GRANT OF RIGHT OF WAY — CONDITIONS—FORFEITURE. To avoid a forfeiture for condition subsequent, the courts are inclined to regard a grant of land to a railroad in consideration of an agreement to operate the road and maintain a station, as creating a covenant running with the land, and not a condition subsequent, and consequently privies and successors in interest could maintain an action for damages on breach of the contract.

RAILROADS (18)—COVENANTS AND CONDITIONS—SUBSTANTIAL PERFORMANCE. The covenants in a grant of land to a railroad whereby the company agreed to operate the road and maintain a station are substantially performed by compliance with the contract for a period of twenty-five years; and abandonment of the road thereafter does not give rise to an action for damages for breach of the covenant.

Appeal from a judgment of the superior court for Pierce county, Card, J., entered April 27, 1918, dis-

[1]Reported in 184 Pac. 344.

missing an action for breach of covenant, upon sustaining a demurrer to the complaint.   Affirmed.

*Guy E. Kelly* and *Thomas MacMahon,* for appellants.

*F. D. Oakley,* for respondent.

MACKINTOSH, J.—Respondent's predecessor was incorporated for the purpose of building and operating an electric railroad line between Tacoma and Steilacoom.   One Whyte at the time was owner of section 22, which was situated near the line of the proposed railroad.   Whyte platted a portion of the southwest quarter of that section and, by written agreement with the railroad company, agreed to convey to it the E. ½ of N. E. ¼ of S. W. ¼; E. ½ of E. ½ of N. W. ¼; Blocks 7, 8, 15, 16, together with a strip of land 30 feet wide through the S. E. ¼ of the section upon which the railroad had been located.   The agreement between Whyte and the railroad company provided that Whyte should give a warranty deed to it and its assigns, which deed was to be deposited in escrow "to be delivered to the said party of the second part upon the performance by the said party of the second part of the following covenants and conditions, that is to say:

"The said party of the second part is to pay to the said parties of the first part the sum of one dollar, amount expressed in said deed as the consideration thereof, and shall on or before the 30th day of January, 1891, build, equip and operate a narrow gauge railroad between its point of beginning at, in or near the city limits of the city of Tacoma, Pierce county, state of Washington, along, through, over and by that certain lot, piece or parcel of land belonging to the said party of the first part, particularly described as follows:

"A strip of land thirty (30) feet in width through the southeast one-quarter of section No. twenty-two

(22) in township No. twenty (20) north of range two (2) east of Willamette M., said strip being fifteen (15) feet on either side of the center line of the railroad track of the said party of the second part as the same is now located and shall be hereafter constructed through said tract, which said last described tract of land the said parties of the first part for the consideration of one dollar, the receipt whereof is hereby acknowledged, do hereby grant and convey unto the said party of the second part, its successors and assigns forever in fee simple for the use, and purpose of a right of way for said railroad forever disclaiming any and all interest in and to said tract, provided, however, that said party of the second part shall use said described tract for the purpose of said right of way and other railroad purposes, and from thence to such a point at or near section 29 in township 20 north, of range 2, E. W. M. (or further if considered practicable or desirable), as the said party of the second part may determine and shall at all times maintain and operate said narrow gauge railroad either by itself or assigns between its terminal points and shall establish and maintain a station at such point upon or near the land last hereinabove described as shall be determined on, on the line of said railroad, and as shall be most advantageous to the parties hereto and shall stop the trains of said railroad at such stations on all trips either coming or going between said terminal points for the accommodation of the parties of the first part herein and any and all passengers who may desire or seek transportation from said station by said route or line of railroad.

"And it is stipulated, understood and agreed by and between the parties to this contract that as soon as said line of railroad is established, completed and equipped along and upon said last described lands said Pacific National Bank, who holds said deed in escrow, shall and may then deliver as the act and deed of the parties of the first part the said deed to the party of the second part herein for its own use and benefit, and for the benefit of its assigns.

"And it is understood and agreed between the parties hereto that the party of the second part is to have the immediate possession and control of said premises from and after the execution of said contract, and should said party of the second part fail to build and equip said railroad and to build and maintain such station as herein provided, then the said Pacific National Bank, who holds said deed in escrow, shall deliver said deed back to said parties of the first part, their heirs or assigns, and this agreement shall thereupon be void and of no effect."

The railroad company constructed the road, obtained the deed, and took possession of the property, selling and disposing of that portion thereof not used by it for its right of way. At the time of platting, Whyte mortgaged all of the S. W. ¼ of the section except the E. ½ of E. ½ of S. E. ¼ of the S. W. ¼ and E. ½ of S. E. ¼ of N. E. ¼ of S. W. ¼ to the Mason Mortgage Company, which sold the mortgage to the ancestor of the plaintiffs, who purchased the mortgage, relying upon the value of the property as the same was enhanced by the railroad and transportation facilities, the property not then or now being worth the purchase price except as the same should be connected with Tacoma by adequate transportation facilities. Thereafter the respondent in this action purchased all the property and franchises of the Tacoma and Steilacoom Railway Company and operated the road for twenty-five years or more. The appellant's ancestor was compelled to and did foreclose the mortgage and bought in the property at the mortgage sale, and died, devising the property to the appellants. Thereafter the respondent discontinued the operation of the railroad at this point and tore up and abandoned the same; and the appellants brought this action at law seeking to recover damages from the respondent for its failure to comply with the agree-

ments in its contract, upon the theory that these agreements constituted covenants running with the land and that the abandonment of the railroad constituted a breach of such covenants, which entitled the appellants to maintain an action for damages. A demurrer was sustained to the complaint and the action was dismissed, upon which this appeal was taken.

It is to be borne in mind that this is not an action seeking to enjoin the railroad company from abandoning the line, such as was the case of *Day v. Tacoma R. & Power Co.*, 80 Wash. 161, 141 Pac. 347, L. R. A. 1915B 547, which relates to the same situation, and to which case reference is made for the facts relative to the abandonment; that being an action where the property owners were attempting to obtain equitable relief by way of injunction. Nor is this an action in equity seeking to recover property granted to the railroad company upon a breach of the conditions accompanying the grant. The appellants argue that the agreement between Whyte and the railroad company created covenants running with the land, and that, therefore, they being now the owners of the land, can recover for the breach of such covenants. The respondent argues that the agreement merely created conditions subsequent, for a breach of which the proper parties in interest would be confined to a forfeiture of the property granted; and that the appellants, not being the grantor nor his heirs, are strangers to, and have no right under, the contract to enforce such forfeiture or recover damages.

This phase of the case involves one of the most complicated questions in the law. From the time of *Spencer's Case,* reported in 5 Coke 16, till the present day the courts have been engaged in painstaking but irreconcilable expositions of the subject, until, as was said by this court in *Pioneer Sand & Gravel Co. v. Seattle*

*Construction & Dry Dock Co.,* 102 Wash. 608, 173 Pac. 508:

"Many of the old doctrines have since been expressly overruled; others seem to be ignored; and more and more equity has come to enforce covenants which technically do not run with the land. . . . At any rate, the contract appears to be such a covenant regulating or restricting the use of the land as will be enforced in equity, when the party acquiring title took with notice, whether it is technically a covenant running with the land or not."

The law not looking with favor upon forfeitures, the courts have been inclined, in cases difficult of solution, to resolve the doubt in a disputed agreement as creating a covenant running with the land rather than as a condition subsequent. *Union Stockyards Co. v. Nashville Packing Co.,* 140 Fed. 701. The following cases, including *Pioneer Sand & Gravel Co. v. Seattle Construction & Dry Dock Co.,* just cited, would incline us to the view that the agreement between Whyte and the railroad company gave rise to covenants running with the land: *Withers v. Wabash R. Co.,* 122 Mo. App. 282, 99 S. W. 34; *Dorsey v. St. Louis, A. & T. H. R. Co.,* 58 Ill. 65; *Georgia Southern R. v. Reeves,* 64 Ga. 492; *Gilmer v. Mobile & M. R. Co.,* 79 Ala. 569; *Whalen v. Baltimore & O. R. Co.,* 108 Md. 11, 69 Atl. 390, 129 Am. St. 423, 17 L. R. A. (N. S.) 130; *Blanchard v. Detroit, L. & L. M. R. Co.,* 31 Mich. 43, 18 Am. Rep. 142; *Ford v. Oregon Elec. R. Co.,* 60 Ore. 278, 117 Pac. 809, Ann. Cas. 1914A 280, 36 L. R. A. (N. S.) 358.

The case of *Mills v. Seattle & M. R. Co.,* 10 Wash. 520, 39 Pac. 246, holding that the agreement there under consideration was a condition subsequent is based upon the fact that the grantee was in that case insisting upon such a construction; the court saying:

"It is a proposition too well understood to require argument or citation, that courts do not favor forfeitures, and that, for that reason, they go very far in construing the provisions of a deed poll against the grantor, to the end that the estate granted may not be defeated, since the almost universal effect of sustaining a stipulation in such an instrument as a condition subsequent is to work great hardship upon the grantee. But wherever the terms of the instrument are plain and unambiguous, there is no hesitation in enforcing the actual contract made by the parties.

"Where, however, the rare instance occurs, as it does here, that the grantee is found insisting upon the construction of a condition subsequent, and that forfeiture shall take place, all consideration for him, and all idea of hardship to him is eliminated, and the court is free to act without such consideration. The appellant here has all along been urging the theory of a condition subsequent, and has by its answer offered to pay the just value of the land taken by it, and damages to land of the respondent not taken."

*Mouat v. Seattle, L. S. & E. R. Co.,* 16 Wash. 84, 47 Pac. 233, was dealing with a stipulation in a deed which on its face was apparently intended as a condition subsequent. The same is true of the case of *Sherman v. Town of Jefferson,* 274 Ill. 294, 113 N. E. 624; and *Fowler v. Coates,* 201 N. Y. 257, 94 N. E. 997.

On the assumption, then, that Whyte's contract with the railroad company created a covenant running with the land, it would follow that the plaintiffs in this action were the proper parties and that an action for damages for breach of those covenants would be maintainable by them if not defeated by other principles of law; which brings us to the consideration of the next point presented by the respondent, viz.: that the contract did not impose upon the railroad company the duty of operating the railroad in perpetuity or during any specified period; that the terms of the con-

tract were substantially complied with by the railroad having been operated for a period of twenty-five years.

With this statement, the law seems to agree with practical unanimity. *Mead v. Ballard,* 74 U. S. 290, was an action brought in ejectment to recover land conveyed upon the understanding that an institution of learning ''shall be permanently located upon said lands,'' which institution was located with the intention that there should be its permanent situation. The buildings were thereafter destroyed by fire and the institution subsequently erected upon another piece of land. The supreme court of the United States, in that case, said:

''The thing to be done was the location of the institute. Did this mean that all the buildings which the institution might ever need were to be built within that time, or did it mean that the officers of the institution were to determine, in good faith, the place where the buildings for its use should be erected? It is clear to us that the latter was the real meaning of the parties, and that when the trustees passed their resolution locating the building on the land, with the intention that it should be the permanent place of conducting the business of the corporation, they had permanently located the institute within the true construction of the contract.

''Counsel for the plaintiff attach to the word 'permanent,' in this connection, a meaning inconsistent with the obvious intent of the parties, that the condition was one which might be fully performed within a year. Such a construction is something more than a condition to locate. It is a covenant to build and rebuild; a covenant against removal at any time; a covenant to keep up an institution of learning on that land forever, or for a very indefinite time. This could not have been the intention of the parties.

''We are of the opinion that the testimony shows, in any view that can be taken of it, that the condition

was fully complied with and performed, and with it passed all right of reversion to the grantor or his heirs."

The supreme court of the United States in *Newton v. Commissioners,* 100 U. S. 548, was considering a case where the county seat of one of the counties of Ohio "was permanently established in the town of Canfield," the citizens of that town having furnished the land for the purpose of having the county buildings erected thereon. The court held that although the contract provided for a permanent establishment (it will be noticed that the contract before us merely provided for construction and maintenance and nowhere is the word "permanent" or its equivalent used) that the contract should not be construed so as to compel the county seat to remain forever upon the land granted and that the grantor must be presumed to have known that the legislature had power to remove the county seat at pleasure, and that he must be held to have had in view the possibility of such change when he made his grant.

So here, when Whyte made his grant, he realized that he was dealing with a public service corporation and its duties to and control by the public were matters which must be held to have entered into his contract. The leading case on this subject is *Texas & Pac. R. Co. v. Marshall,* 136 U. S. 393, being a case where the city of Marshall, Texas, gave to the railroad company $300,000 in bonds and 66 acres of land for shops and depot, the company in consideration of this action agreeing to "permanently establish its eastern terminus and Texas offices at the city of Marshall" and "to establish and construct at said city the main machine shops and car works of said railway company." The city performed its agreements, and the company, on

its part, made Marshall its eastern terminus, and built depots and shops, and established its principal offices there. After the expiration of a few years, Marshall ceased to be the eastern terminus of the road, and some of the shops were removed. The supreme court held that the contract on the part of the railway was satisfied and performed when the city had been made the terminus, stores and shops set up and kept going eight years, until the interests of the public and of the railroad demanded the removal of some or all of those subjects of the contract to another place; that the contract, under the circumstances, had been complied with and that the public interest was served by abandoning and removing the property.

*Whalen v. Baltimore & O. R. Co.*, 112 Md. 187, 76 Atl. 166, had been once before the court as an action in equity to compel the railroad company to specifically perform its agreement which it had made with the plaintiff's predecessors to construct and operate and maintain a side-track. (*Whalen v. Baltimore & O. R. Co.*, 108 Md. 11, 69 Atl. 390, 129 Am. St. 423, 17 L. R. A. [N. S.] 130.) The side-track was maintained for a period of fifty-nine years and then abandoned. The supreme court of Maryland, having dismissed the equity action, the plaintiffs began an action in law for damages for breach of contract. The court held that the word "maintained," as used in such agreement, did not require the railroad company to continue the side-track permanently; that the length of time during which the covenant had been complied with constituted a substantial performance thereof, so that the railroad was not liable in damages for its breach:

"Considering the language used in the covenant before us, it is to be observed that, while it distinctly provides for the construction and maintenance of the turnout and siding . . . it is entirely silent as to

the duration of the maintenance of those structures or that service.  We cannot yield our assent to the contention of the appellant that the word 'maintain' ordinarily means to maintain indefinitely or forever. Its meaning in that respect depends upon the context in which it appears and the subject-matter to which it relates.  There is plainly no specific or positive provision in the covenant touching the duration of the time during which the covenanted acts are to be done or privileges furnished.''

Judge Taft, in *Jones v. Newport News & M. V. Co.,* 65 Fed. 736, held that an agreement by a railroad company and one owning land adjacent to its track to establish and maintain switch connections could not be the basis of a recovery of damages upon the railroad's discontinuing the service, the court saying that to hold otherwise would :

''forever limit the discretion of the directors to deal with a subject which may seriously affect the convenience or safety of the public in its use of the road.''

*Texas & Pac. R. Co. v. Scott,* 77 Fed. 726, 37 L. R. A. 94, dealt with a contract between Scott and the railroad company whereby Scott contracted to give a right of way over his land if the company would establish a depot thereon.  The railroad was built and the depot established and maintained for thirty-six years, when it was abandoned for reasons connected with the best interests of the public and the company.  The court held that the contract did not bind the railroad company to keep up a depot forever, but that its maintenance until such time as the best interests of the public and the corporation required abandonment was a substantial compliance with the contract.

In *Lucas v. New York, N. H. & H. R. Co.,* 130 Fed. 436, the defendant had contracted with the plaintiff in consideration of his dedicating a strip of land for

the purpose of constructing a roadway that it would make, when it changed its passenger station, a suitable entrance way into its station grounds and continue the roadway eastward. This the railroad did, but very shortly thereafter the roadway and entrance were discontinued. It was held that defendant did not bind itself to maintain a permanent entrance and road, and having maintained the same until the city had changed the grade, it was not liable for breach of its covenant.

In *Union Stockyards Co. v. Nashville Packing Co.*, 140 Fed. 701, the plaintiff conveyed land to the defendant upon a contract by which the defendant agreed to build and maintain a packing house of specified capacity, the contract providing no time during which the agreement should endure, the deed reciting that it was made "upon condition of the due performance of the contract by the grantee." The packing house was built, but its operation subsequently abandoned.

"Another feature of the transaction which seems to us of much significance is that no time was fixed during which the obligation to maintain and operate the packing house should endure. It seems to be hardly reasonable to suppose that the parties could have understood that this covenant should continue to operate perpetually. Indeed, one can hardly withstand the conviction that the covenant was expected by the parties to have some limitation in respect of time, and, if so, it might be a question whether any other limitation is more natural or probable than that it should abide such contingencies of the business as could not in the natural course of things be avoided, as, for instance, could not, with prudent management, be carried on without loss. Of course, we are not now undertaking to lay down a particular definition of the contingencies which might terminate the obligation."

These cases would seem to be squarely in point on the question before us and to determine it in respond-

ent's favor. This being true, the demurrer was properly sustained.

FULLERTON, TOLMAN, MAIN, and MITCHELL, JJ., concur.

HOLCOMB, C. J., took no part.