## STONER v MARKEY

Ohio Appeals, 3rd Dist, Marion Co.

No. 900.  Decided Jan. 2, 1940.

Donithen & Michel, Marion, for plaintiff-appellant.

George T. Geran, Marion, for defendant-appellee.

## OPINION

By GUERNSEY, J.

This is an appeal on questions of law from a judgment of the Common Pleas Court of Marion County, Ohio. The action was originally brought by the plaintiff, E. E. Stoner, appellant, against the defendant Milton Markey, appellee in justice court to recover damages for the alleged conversion of a one-half interest in approximately ten acres of wheat located in Montgomery township, Marion County, Ohio, amounting to 101 bushels of the value of $101.

A jury in the justice's court returned a verdict for $83.95 in favor of plaintiff and judgment was entered on the verdict. An appeal on questions of law and fact was taken to the Common Pleas Court of Marion County and the case tried to a jury there. At the close of plaintiff's evidence a motion was made by the defendant for the direction of a verdict in his favor, which at the time was overruled. This motion was renewed at the close of all the evidence and was then sustained and the jury directed to return a verdict for the defendant. Judgment was entered in favor of the defendant on the directed verdict, and it is from this judgment this appeal is taken.

The motion for a directed verdict was based mainly upon the proposition that Stoner was a sub-tenant and that the lease to the tenant contained a provision prohibiting the assigning or subletting, and further provisions for forfeiture in case the lessee violated the provisions of the lease.

As shown by the bill of exceptions, there is evidence tending to prove the following facts:

The Buckeye State Building & Loan Association of Columbus, Ohio, owned a farm of 142 acres in Montgomery Township, Marion County, Ohio, and on

November 1, 1933, entered into a written contract of lease with option to purchase of this farm, with a man by the name of Hiram G. Wygle. The lease provided for a term beginning on the 1st day of November, 1933, and ending on the 1st day of November, 1936, at a rental of $25 per month, payable each month in advance at the office of the Company or at such other place as might be designated by it.

The lease, among other things, provided that: "Lessee shall not assign this lease, nor sublet said premises or any part thereof without the written consent of the lessor."

It also contained a further provision that: "In case of a violation of any of the terms, covenants, agreements and provisions hereof by the lessee, or upon the lessee's failure to perform any of the terms, covenants, agreements and provisions herein specified, then and in either of said events, and without previous notice or demand, this lease at the option of lessor shall be forfeited, and the lessee shall, upon such failure, forfeit and lose all right, title and interest in and to said lease and on said real estate and the right to use and occupy the same."

L. E. Wygle, the son of Hiram G. Wygle, was residing on the farm at the time the above mentioned agreement was entered into, and without any formal assignment or subletting from his father, Hiram G. Wygle, but with the knowledge and acquiescence of the lessor, evidenced by both written and oral communications, continued in the possession, use and occupation of the premises after the commencement of the term of the lease, making certain of the rental payments provided for in said lease direct to the lessor, until March 1936, when his father surrendered said lease to the lessor and he removed from the premises. the father never having occupied them.

A default in the making of such rental payments occurred in the spring of 1935 but the lessor did not exercise its option to declare the forfeiture provided for in the lease.

In the fall of 1935, the plaintiff, E. E. Stoner entered into an agreement with L. E. Wygle whereby he, Stoner, was to put out to wheat, (that is to furnish all the necessary seed, labor and equipment to plant and raise a crop of wheat on) approximately ten or eleven acres of the premises, upon the terms that L. E. Wygle would advance to him all the necessary seed wheat and Stoner would repay him for the seed wheat that fall, and that the parties would share half and half in the crop of wheat raised.

E. E. Stoner, pursuant to this agreement, put out the wheat in controversy, in the fall of 1935, and the wheat was growing on the premises when the defendant purchased the premises from The Buckeye State Building & Loan Association and entered into possession thereof subsequent to the surrender of the lease thereof by Hiram G. Wygle and the removal of L. E. Wygle from the premises in March, 1936.

The lessor, The Buckeye State Building & Loan Association, did not have notice or knowledge of the agreement between L. E. Wygle and E. E. Stoner and did not consent thereto.

The wheat from the tract mentioned which amounted to 205 bushels of the market value of $1 per bushel, was harvested and sold by the defendant Markey in August, 1936.

After defendant had started cutting the wheat and before he had sold the same, that plaintiff notified him that he was entitled to and claimed the one half thereof. The defendant, prior to that time, had no notice or knowledge that the plaintiff was entitled to or claimed any interest in the wheat, except such knowledge and notice he may have been chargeable with by reason of the fact that the wheat was growing on the premises at the time he purchased and took possession of the same.

There is a general custom established in the place where the said premises are situated, that in case of a lease of farming lands, whether by deed or parol, commencing on the date in a month of one year and extending to the same date in the same month in

the succeeding year, giving to the tenant the right to the away going crop. This customary right of a tenant is not either expressly or impliedly negatived by the terms of the lease mentioned.

It is clear from the evidence that notwithstanding there was no formal assignment of the lease or subletting of the premises by Hiram G. Wygle to his son L. E. Wygle, the lessor had knowledge of and acquiesced in the son L. E. Wygle exercising all the rights that his father had under the lease. This knowledge and acquiescence had the effect, for all the purposes of this case, of establishing as between the lessor and the son of the lessee, the relationship of landlord and tenant under the written lease.

As tenant under the lease, the son L. E. Wygle was prohibited by the terms of the lease, under penalty of forfeiture, from assigning the lease or subletting the premises without the written consent of the lessor.

These provisions had the effect of preventing the son from creating the relationship of landlord and tenant with reference to the premises, between himself and any other person without the written consent of the lessor which, as shown by the evidence, was not given to the agreement entered into between the son and the plaintiff.

However, such terms did not prohibit the son from entering into, or render invalid, any agreement by the son with another person for the farming of such premises, which did not constitute a relationship of landlord and tenant between the son and such person.

It is well settled that a person may be employed to cultivate land, receiving as his compensation a share of the crops, without the relation of landlord and tenant between the parties being created. 15 American Jurisprudence—Title, Crops, Sec. 49, p. 239.

In any case where the possessor of land agrees with another, either as occupant or mere cultivator, to pay the latter as compensation for working the land, the value of a certain portion of the crops or a certain share thereof, the occupant or cultivator does not become a tenant of the possessor of the land and the agreement between them is not to be construed as a lease but a mere cropping contract. In such case the agreement between the parties does not create the relation, nor the rights and liabilities of landlord and tenant but simply those of possessor of land and cropper. 98 American State Reports, p. 955.

As shown by the evidence in this case, the son L. E. Wygle, as tenant of the lessor, through acquiescence resided on and was in general possession of all the premises leased.

The agreement between him and the plaintiff contemplated that he should advance all the seed wheat to plaintiff for the putting out of the wheat crop on the tract mentioned, for which the plaintiff should repay him in the fall and that each should share half and half in the wheat raised.

The situation of the parties and the terms of the agreement are all consistent with the creation of the relationship of employer and employee, with payment in a share of the crop, as distinguished from the relationship of landlord and tenant, which employer-employee relationship is not inhibited by the terms of the lease.

For the reasons mentioned, the agreement entered into between L. E. Wygle and the plaintiff, as shown by the evidence, was not inhibited by the provisions of the written lease providing under penalty of forfeiture that the lease should not be assigned or the premises sub-let without the written consent of the lessor.

Relations between the owner or possessor of the land and the one contracting to grow a crop thereon, were gen-

erally classified at common law either by the terms "owner and cropper" or "landlord and tenant". Where the relation was that of owner and cropper, the title to the whole of the growing crop was in the owner and subject to sale by him, or to be levied on as his property. Where the relation was that of landlord and tenant, the title to the whole crop was in the tenant, with full power of disposal, voluntary or involuntary. The manifest injustices that ensued led to legislation in some states, and in others to adjudications of the courts that tended to avoid the mischief that resulted from creating the farmer in one case and the owner in the other, a mere creditor of his associate in the joint enterprise. Tiffany on Landlord and Tenant, Secs. 10, 20, 253.

As a result of these departures from the common law, it is the well-nigh universal rule that every form of contract by which the use of land is given to one who is to cultivate it and give the owner as compensation therefor a share of the crops, creates a tenancy in common in the crop, and this is so whether the agreement between the parties is a lease or a mere cropping contract. **Second National Bank of Circleville v Hyde et, 29 Oh Ap 357, at 363; 98 American State Reports, p. 959.**

Under the authorities mentioned, the relationship of employer and employee existed between L. E. Wygle and the plaintiff with reference to the crop and by virtue of this relationship the plaintiff became a tenant in common with L. E. Wygle in the crop.

The question then arises as to whether the surrender of the lease by Hiram G. Wygle and the surrender of the possession of the premises by L. E. Wygle in a rental year subsequent to the rental year in which the crop was planted, operated to forfeit the rights of the plaintiff as a cotenant in the crop.

The matter of general custom with reference to a tenant having the right to away going crops planted during his term and harvested subsequent to the expiration of his term, existing at the place where the premises are situated, has no bearing on the solution of this question, as such general custom applies only to cases where the tenant is holding under a lease which by its terms expires prior to the maturity of the crop.

In the case at bar the terms of the lease extended to November 1, 1936, and if the lease had not been forfeited there would have been ample time during its term for the crop to mature and be harvested.

There is a general principle of law applicable to all agreements with reference to the farming of land on a crop basis, based on the benefit to and encouragement of agriculture, that he who sows ought to reap. Pursuant to this general principle it has been held that subtenants for designated terms are on the termination thereof by reason of over-tenants breach of condition entitled to growing crops. L. R. A. 1917C, p. 47; Gray v Werst, 129 Mo. 122, 31 S.W. 585; Nye v Petterson (1877) 35 Mich. 413; Carney v Moshier (1893) 97, Mich. 554, 56 N.W. 935. See also, annotations 83 A. L. R. 114 et seq.

While we find no specific holdings to the effect that a person employed as a share cropper by a tenant who thereby becomes a tenant in common with the tenant in the crop is entitled to hold his interest in the crop on the surrender or forfeiture of his lease by the tenant, it clearly appears from the reasoning upon which the rules are based that the same rules are applicable to their rights as are applicable to subtenants of over-tenants, and we so hold. The plaintiff, therefore, notwith-

standing the surrender of the lease by Hiram G. Wygle and the surrender of possession by L. E. Wygle, was entitled to the half interest in the crop as provided in his agreement with L. E. Wygle, as against the lessor owner The Buckeye State Building & Loan Association. The legal effect of the conveyance of the premises by the Association to the defendant subsequent to the surrender of the lease, was to transfer the premises with the crop subject to the interest of the plaintiff in the crop, and the defendant under the conveyance held the premises subject to said claim.

The evidence tends to prove the defendant harvested the crop, sold it and kept the entire proceeds after notice of plaintiff's right to the one half thereof.

For the reasons above mentioned, the evidence tended to prove a cause of action in conversion by plaintiff against defendant. The court therefore erred in directing a verdict in behalf of the defendant, and for this error the judgment will be reversed and the cause remanded for a new trial and further proceedings according to law, at the costs of the defendant-appellee.

CROW, PJ. & KLINGER, J., concur.