[No. 9208.    Department One.    March 17, 1911.]

CARLISLE PACKING COMPANY, *Respondent*, v. E. B. DEMING *et al.*, *Appellants*.[1]

JURY—BREACH OF CONTRACT—ACCOUNTING. An action for breach of a contract to purchase plaintiff's pack of salmon is properly tried to a jury as a law case, and not in equity for an accounting, where the issue was as to the terms of the contract, and an accounting was only incidentally involved to determine the extent of the damages.

ACCOUNTING—TRUSTS—BREACH OF CONTRACT. On breach of a contract to purchase plaintiff's pack of salmon, whereupon plaintiff, after giving notice, resold the same on the open market, paying expenses for freight, insurance, cartage, storage, commissions etc., there is no such trust or fiduciary relation as to make the case exclusively one for an accounting.

CONTRACTS—PARTIES—PLEADING. A party defendant making a contract on behalf of two corporations should set up the fact in his answer, in order to escape personal liability, where plaintiff alleged that he made the contract acting for himself and his codefendant; and where defendants answered jointly by a general denial, all are bound jointly, if the contract is proved as alleged.

PRINCIPAL AND AGENT—CONTRACTS—PERSONAL LIABILITY OF AGENT —CORPORATIONS. Where a resident manager, who was the principal stockholder and responsible head of two foreign corporations, entered into a contract which he promised to reduce to writing, but failed to do so, so that it was left indefinite as to who the responsible parties were, he cannot claim that he was not personally liable, in the face of evidence that the other party was dealing with and relied upon him.

EVIDENCE—ACCOUNT BOOKS—ADMISSIBILITY. Account books showing items of sales made are admissible in evidence for the purpose of showing the sales and the net proceeds, even if they were not books of original entry or kept by a competent bookkeeper.

[1]Reported in 114 Pac. 172.

SAME—STATEMENTS FROM BOOKS. A statement drawn from account books is properly admitted in evidence where it was a copy from the books and a witness having personal knowledge of all the items testified that the items were correct.

PLEADINGS—OBJECTION TO COMPLAINT—AMENDMENTS TO CONFORM TO PROOF. A motion for a nonsuit on the ground that an essential fact had not been alleged in the complaint is properly denied where the motion was not made until the fact had been proved; since the complaint will be deemed amended.

TRIAL—INSTRUCTIONS—ASSUMPTION OF FACTS. Where there was no question upon a certain fact, the court may assume it to be an established fact in the case, and instruct the jury without reference to any question thereon.

Appeal from a judgment of the superior court for Whatcom county, Hardin, J., entered June 13, 1910, upon the verdict of a jury rendered in favor of the plaintiff, in an action on contract. Affirmed.

*Kerr & McCord*, for appellants.

*Fairchild & Bruce* and *Dorr & Hadley*, for respondent.

MOUNT, J.—This action was commenced by the plaintiff to recover the sum of $12,955, upon a claim growing out of an alleged breach of contract for the purchase of certain canned salmon of the pack of 1907. The essential allegations of the complaint are as follows:

"That on or about the ...... day of .........., 1907, the defendant E. B. Deming, acting for himself and his co-defendants, entered into a contract with this plaintiff for the purchase of all of the salmon fish packed and to be packed by this plaintiff for the season of 1907; that said agreement was that the said defendants would purchase from this plaintiff, who would sell to said defendants, all of the several grades and varieties of salmon to be packed by plaintiff during the season of 1907, and pay plaintiff for each grade of salmon the "opening price" thereof, of each grade, kind and size, and make payments as the same were shipped and within ten days from the date of delivery, with an allowance of 1½ per cent for cash discount and 5 per cent brokerage. Deliveries were to be made to some railway terminal point at the

expense of this plaintiff, and the said defendants were to furnish shipping instructions on or before February 1st, 1908, or take whatever portion remained unmoved at that time, and pay for the same, warehousing it if necessary, and all expenses of such disposition, and shipping instructions were to be given to this plaintiff at and before the time for delivery. That pursuant to said contract this plaintiff delivered to the said defendants all of its pack and the said defendants took said pack and paid for same, except as hereinafter set forth; that the 'opening prices' and sum which the defendants agreed to pay for such pack were as follows: Sockeye talls, $1.65; sockeye flats, $1.80; pink talls, 80c., pink flats, 90c.; pink halves, 60c.; that the words "talls' and 'flats' have reference to each twelve cans of one pound capacity or a half pound capacity; that each case of salmon contained four dozen cans or forty-eight cans in all, of one pound capacity; that amongst others of the pack sold to the defendants by said plaintiff were 10,903 pink flats and the opening value and price of which was 90c. per dozen, or $3.60 per case; and at the direction and upon the instruction of the said defendants said salmon were delivered between the 4th day of October, 1907, and January 1st, 1908, and the price so agreed to be paid became due and payable to plaintiff; that said defendants disregarding their contract aforesaid, after the receipt of the property as aforesaid refused to pay this plaintiff for the said 10,903 cases of pink flats and abandoned the said property to this plaintiff, after making it subject to charges for warehousing and insurance placed by the said defendants, and this plaintiff, in order to save itself, was required to take said salmon and to sell the same upon a depreciated market and at a less price than the defendants had agreed to pay, and was required to pay the insurance and warehouse charges incurred against said property; that said property was sold to said defendants at the sum of $36,786.20 and plaintiff was required to retake and sell the same for a total sum of $30,001.75, whereby it lost $6,784.45 on said salmon, and it lost on account of moneys paid out, storage and insurance $1,706.84 and on commissions the sum of $1,530.68, and it was deprived of the use of its money and was required to pay interest on account thereof amounting to $2,146.16; that because of the acts and doings of the said defendants and

their failure to keep and perform their contract as afore-said this plaintiff has suffered loss and damage in the sum of $12,955.04, with interest thereon since January 1st, 1908."

The defendants joined in an answer denying all of the allegations of the complaint. The cause was tried to a jury, and a verdict was rendered against all of the defendants for $12,700; and on June 13, 1910, a judgment was entered in favor of the plaintiff for that sum. This appeal is prosecuted by defendants from that judgment.

It was contended by the plaintiff at the trial that, in the spring of 1907, the defendants agreed to purchase all of the canned salmon to be packed by the plaintiff during the season of 1907, at the "opening price" for such salmon for that season, from which price the defendants were to be allowed to deduct five per cent for commissions and a discount of one and one-half per cent, and that the salmon which was unsold by the defendants on February 1, 1908, should be taken over by the defendants and paid for at the opening price, less the commission and discount above stated; that defendants purchased all of plaintiff's salmon pack of that season excepting 10,920 cases of four dozen cans each; that this salmon, known as "pink flats," was abandoned to the plaintiff after it had been subject to warehouse charges and insurance created by defendants, and that on February 5, 1908, the defendants refused to pay for or take the said salmon and that plaintiff, in order to save itself, was required to pay the charges against the salmon and to sell it upon a depreciated market at less than the defendants had agreed to pay.

The defendant Deming denied that any such contract was made, but testified that he made an agreement with the plaintiff for handling the salmon of the plaintiff for the year 1907, by which agreement the Deming-Gould Company was to sell the salmon upon a purely brokerage basis; and that there was no agreement to take over the salmon for that season, but that it was agreed that upon the said date the

Deming-Gould Company would take over at the then market price all of such salmon remaining unsold, and that on February 5, 1908, Mr. Deming offered to take over all salmon in dispute at the market price on that day, which was eighty cents per dozen cans. It is conceded in the case that the "opening price" of the class of salmon in dispute was ninety cents per dozen, and that Mr. Deming took over and paid for all of plaintiff's pack for that season except the part in dispute, and paid for the same at the opening price. It is also conceded that Mr. Deming was the managing agent at Bellingham of the Deming-Gould Company of Chicago, and the vice president of the Pacific American Fisheries, and had authority to make any kind of contracts for these companies; that these companies were large dealers in canned salmon, and that Mr. Deming arbitrarily fixed the opening prices of such salmon. Other facts necessary to an understanding of the points discussed will be stated in the consideration thereof.

The appellants argue that the court erred in refusing to discharge the jury and try the case as an equity case for an accounting. In the progress of the case it appeared that the salmon in dispute had been stored in a warehouse controlled by the defendant Deming, and that upon Mr. Deming's refusal to take the fish and to pay the opening price—ninety cents per dozen, the plaintiff, through its agent, notified Mr. Deming that the plaintiff would offer the fish for sale upon the market and hold Mr. Deming upon his contract for the difference between the contract price and the net price at which the fish might be sold; that thereafter the fish were placed upon the market and sold in small lots to numerous purchasers; that upon each sale it was necessary to determine the selling price, freight charges, insurance, cartage, commissions, and other items of expense in order to arrive at the net amount received by the respondent; that the plaintiff thereby became trustee for the defendants in regard to the

sales of the property, and that an accounting became nec-
essary.

This position might have been correct if an accounting
had been the only issue between the parties; but as we view
the case, this accounting, if it may be termed such, was only
an incidental matter. The main and real issue in the case
was whether there was a contract, and if so, what were the
terms of it. This issue was made by the pleadings, and
stoutly maintained from the beginning of the case to the
end. It is true that by the evidence it was conceded that a
contract had been entered into, but the terms of this contract
were never conceded. For that reason the case was one for
the jury. There was, finally, no substantial dispute that the
goods were sold, or that the statement of receipts and dis-
bursements on account of these sales made by the respondent
was correct. The right of the plaintiff to recover at all de-
pended solely upon the terms of the contract. The action
was not one for an accounting, but was for a breach of con-
tract. The respondent had sold its own goods for the best
prices obtainable, and its measure of damage was the differ-
ence between the selling price and the contract price, pro-
vided the contract and breach of it were established. There
was no such trust or fiduciary relation existing as would
make the case exclusively one for an accounting; and the
cases of *Maitland v. Purdy*, 49 Wash. 575, 96 Pac. 154, and
*Goupille v. Chaput*, 43 Wash. 702, 86 Pac. 1058, and cases
of that character, are therefore not in point here. Cases of
this character are usually tried to a jury as a law case.
See *Hayes v. Nashville*, 80 Fed. 641. The court did not
err in refusing to discharge the jury.

At the close of the plaintiff's evidence, counsel for de-
fendants moved for a nonsuit as to the defendant Deming
and as to the Pacific American Fisheries, upon the ground
that there was no evidence to connect these two defendants
with the contract sued upon; and again, at the close of all
the evidence in the case, counsel moved for a directed verdict

as to the defendant Deming. These motions were denied, and each of these rulings of the court is assigned as error. These errors are argued separately in the brief, but they all depend upon substantially the same state of facts.

It was conceded that Mr. Deming was the vice president of the Pacific American Fisheries and managing agent of the Deming-Gould Company, and had authority to bind these companies by such contracts. Mr. Wright, who was the managing agent for plaintiff, testified that while nothing was said about the matter except that Mr. Deming was to give him orders for fish *pro rata* with the Pacific American Fisheries, he understood that the contract was to be made with the Deming-Gould Company, but that he was dealing with Mr. Deming personally, and relied upon him. At the time the contract was made, Mr. Deming agreed to reduce the same to writing, but this was never done. All of the fish which were delivered under the contract were delivered and shipped upon Mr. Deming's order. Mr. Deming was in full control of the business of the other two defendants, and their responsible head. It was within his hands at the time the contract was made to make the contract definite in regard to who were the responsible parties thereto, by simply reducing the same to writing as he had agreed to do. At the time the action was begun, the plaintiff, not knowing which one of the defendants was responsible, made all three of them defendants. When the answer was filed, all of them joined therein and made a joint answer containing general denials only. If the defendant Deming desired to deny that he made the contract for himself personally or for the Pacific American Fisheries, that fact should have been set up in the answer. When all joined in the answer, they thereby took issue upon the facts jointly, and if the contract alleged was proved, all were necessarily bound jointly. 1 Ency. Plead. & Prac., p. 861; *Ex parte Lowman & Hanford Sta. & Print. Co.*, 2 Wash. 427, 27 Pac. 232. The record shows that Deming-Gould Company and Pacific American Fisheries were foreign corporations, and that Mr. Deming

was their manager and owned or controlled a majority of the stock of these corporations. Mr. Deming was a resident of Bellingham, where the contract was made. He was engaged in other business besides the business of the corporations. It will not do to say that a person so situated may make a contract and leave it indefinite for whom he makes the contract when he has agreed to reduce it to writing and thereby make it definite, and when a liability arises, then be heard to say that the contract was made for some other party. We are of the opinion, for these reasons, that the court properly denied the motions to dismiss.

At the close of all evidence in the case, the defendants Deming-Gould Company and Pacific American Fisheries filed a petition and bond for the removal of the case to the United States circuit court, upon the ground of diverse citizenship of the parties. It was contended then, and it is argued now, that defendant Deming, being a resident, was not made a party in good faith, but was made such party defendant solely for the purpose of depriving the United States circuit court of jurisdiction over the subject-matter of the action. We have held above that defendant Deming was a proper party. That ruling disposes of this question.

Appellants argue that the court erred in admitting in evidence certain books of account. It is claimed that these books were not books of original entry, that they were not complete, and were not kept by a competent bookkeeper. The court did not allow the books themselves to be admitted in evidence, but permitted a statement to be drawn therefrom, which statement consisted of the items of sales of the fish in controversy. This statement was received for the purpose of showing the sales of fish and the net proceeds thereof. We are satisfied that the books themselves might have been properly admitted under the rules stated in *Cascade Lumber Co. v. Aetna Indemnity Co.*, 56 Wash. 503, 106 Pac. 158. In effect they were admitted, because the statement received was a copy made from the books. This statement, however, was admissible ir-

respective of the fact that it was a copy of the books, because Mr. Wright, the manager of the plaintiff company, testified that he had personal knowledge of all the items of the statement, and that the items were correct. There is, therefore, no merit in this assignment.

Appellants argue that the court erred in refusing a nonsuit as to the Deming-Gould Company, for the reason that the complaint failed to allege notice of an intention to resell the fish and to hold the defendants for the difference between the contract price and the proceeds of the resale. This motion was not made until after the fact had been proved, so that the complaint will now be treated as amended in that respect. The witness Wright, upon this question, testified that, on February, 5, 1908, when Mr. Deming first denied the terms of the contract, he notified Mr. Deming that the fish would be offered for sale, and that he would sue him for the loss. The evidence also shows that Mr. Wright proceeded diligently to make a resale, but was unable to do so until late that year, and that in July he also notified the Deming-Gould Company in writing to the same effect. As soon thereafter as purchasers could be obtained, the goods were sold at a loss. There is substantially no dispute in the record upon these facts. The record is also clear to the effect that the prices obtained for the fish sold were the highest which could have been obtained for that character of fish, and that the expenses of sale were reasonable, and the verdict was not excessive.

The court gave instructions to the effect that, if the jury found that the contract was made and defendants refused to accept the goods, plaintiff would have a right to resell and recover the difference between the contract price and the net selling price; that the plaintiff might deduct from the gross selling price defendants' reasonable expenses, such as insurance, storage, cartage, freight and commissions paid brokers. It is argued that these instructions did not state the law, because they omitted the question of notice. But as we have seen above, the question of notice was not disputed, and the

court no doubt assumed that such was an established fact with which the jury were not concerned; which we think was correct. And it is clear under the evidence that the expenses named were necessary and reasonable, and that the net price received was all that the defendants were entitled to be credited with upon the contract price which they had agreed to pay. We think that the instructions given fully cover the law of the case, and that there was no error therein.

Finding no error, the judgment is affirmed.

DUNBAR, C. J., PARKER, and FULLERTON, JJ., concur.