[No. 28292. Department Two. August 8, 1941.]

ROBERT M. WATKINS, *as Trustee, Respondent,* v. SILER LOGGING COMPANY *et al., Appellants.*[1]

[1]Reported in 116 P. (2d) 315.

704

*W. E. Heidinger,* for appellants.

*Gordon McGauvran* and *James R. Chambers,* for respondent.

BEALS, J.—Prior to 1932, Great Northern Power Company, a Washington corporation, owned a tract of real estate in Snohomish county, upon which was located

a stand of timber. March 31, 1932, the power company entered into a contract with H. S. Boyden, whereby Boyden acquired the right to cut and remove the timber. The contract provided that Boyden should remove the timber within two years from the date of the contract, and that "all timber remaining upon said premises at the expiration of said two year period shall be and remain the property of" the power company. The power company thereafter assigned its interest in the contract to Northwestern Securities Corporation, the assignee being nowise concerned with this action.

By its terms, the contract expired March 31, 1934, but, notwithstanding that fact, Boyden continued to cut and remove timber from the property, dumping some of the logs into the Snohomish river, where they were caught, sorted, and rafted by the Snohomish River Boom Company (hereinafter referred to as the boom company), most of the logs, however, having been placed in rafts belonging to Siler Logging Company (hereinafter referred to as Siler), which sold the logs, remitting the proceeds to the boom company, which in turn delivered the money to Boyden, together with the proceeds of other sales made on his behalf.

The money received from the sale of 62,210 board feet of logs was disposed of in an interpleader action, as hereinafter set forth.

Great Northern Power Company having been later declared a bankrupt, Robert M. Watkins was appointed its trustee, and, as such, instituted this action against Siler Logging Company and Snohomish River Boom Company, as defendants, for the purpose of recovering judgment on account of logs alleged to have been owned by the bankrupt and converted by the defendants. While Robert M. Watkins, as trustee for the bankrupt, is plaintiff in this action, for convenience of

reference we shall refer to the power company as the plaintiff.

The action was tried upon the third amended complaint and the separate answers of the defendants. In this complaint it was alleged that, subsequent to April 1, 1934, Boyden unlawfully and without right removed from the power company's land, and dumped into the Snohomish river, 361,440 feet of logs, which were rafted by the boom company; that Boyden procured the defendants to jointly sell the logs to third parties; and that the logs were thereby converted by defendants and sold by them for the sum of $4,519.82, which was the market value of the logs. Allowing a credit against this amount, in the sum of $616.80, the complaint prayed for judgment against defendants in the sum of $3,903.02. Boyden was not named as a party defendant to the action, the complaint alleging that plaintiff had elected to sue the defendants as joint tortfeasors. The complaint contained an allegation of damage to plaintiff, as the result of defendants' acts, stating a cause of action *ex delicto*.

Defendants filed separate answers, denying many of the material allegations of the complaint, and particularly that the power company had been damaged in any sum by their actions. By way of affirmative defenses, defendants pleaded that many of the logs referred to in the complaint were handled by defendants for the Port Gardner log patrol, and not for Boyden; that other logs were strays, picked up by the boom company; and that for others the power company had already been paid. It was pleaded that Boyden and the defendants had acted in entire good faith; that Boyden had enjoyed the right to remove and sell the logs; that the logs had been paid for, to Boyden or his order; that the logs were without market value; and that the power company had been fully compensated

for the removal of all of its logs. The answers also pleaded an equitable estoppel against the bringing of the action; and a judgment theretofore entered by the superior court of Snohomish county in cause No. 32983 was pleaded as *res judicata.*

Defendants sought, by way of a cross-complaint, to make H. S. Boyden an additional party defendant to the action. On plaintiff's motion, this cross-complaint was stricken by the court, to which ruling defendants excepted.

Replies to the affirmative defenses contained in the answers having been filed, defendants served a demand for trial of the action to a jury, paying the statutory jury fee. Upon plaintiff's motion, an order was entered striking the demand for a jury trial and directing that the cause be tried to the court, to which ruling defendants excepted. Trial of the action resulted in the entry of findings of fact and conclusions of law in favor of the plaintiff, followed by the entry of judgment against defendants, jointly and separately, in the sum of $3,401.50, principal, and $974.90, interest, and against Snohomish River Boom Company in the sum of $411.75, principal, and $123.62, interest, from which judgment defendants have appealed.

Appellants make thirty-five assignments of error, contending the trial court erred in striking their demand for a jury trial; in denying them the right to bring in H. S. Boyden as an additional defendant; in denying their motion in arrest of judgment, or in the alternative for a new trial; in rejecting testimony offered by appellants; in holding that the judgment entered by the superior court for Snohomish county in cause No. 33523 was *res judicata* as to appellants, and in refusing to hold that the judgment of the same superior court in cause No. 32983 was *res judicata* as to respondent. Appellants also assign error upon the re-

fusal of the trial court to hold that respondent had waived its right to maintain any tort action as against H. S. Boyden, and was therefore estopped from maintaining this action against appellants; on the refusal of the court to hold that an equitable estoppel operated against respondent; upon the refusal of the court to hold that respondent, having pleaded a cause of action *ex contractu* in the first three complaints filed herein, was barred from maintaining against appellants an action *ex delicto* on its third amended complaint herein; and that it should have been held that respondent, by accepting the proceeds of 62,210 feet of logs, being the subject matter of cause No. 33349 before the superior court for Snohomish county, is estopped from maintaining an action *ex delicto* against appellants. Appellants also assign error upon the making of many findings of fact and conclusions of law, and upon the refusal of the trial court to rule that, for various reasons, respondent was estopped from maintaining this action, and that the logs had no market value, or that respondent was not damaged in any sum by appellants' acts. Appellants contend that the trial court awarded respondent more than compensatory damages, and erred in so doing, and that the trial court erred in entering judgment against appellants, and in refusing to dismiss the action.

Respondent's brief opens with a motion to dismiss the appeal, or, in the alternative, for an order of this court declining to pass upon the merits of the appeal, for the reason that the trial court made full and complete findings of fact and conclusions of law, and appellants failed to request the court to make any other or different findings, or to propose any findings or conclusions for the court's signature.

Appellants' assignments of error are all based either upon findings which the court made or rulings of the

court upon questions of law, as the same were argued during the trial. Appellants are not contending that the trial court erred in failing to make any particular affirmative finding of fact. On appeal, an appellant may contest the legal propriety or sufficiency of such findings of fact, conclusions of law, and judgment as the court made and entered. In the case at bar, the appeal is properly before us, and respondent's motions are denied.

After the issues were made up, appellants demanded that the action be tried to a jury. Respondent moved for an order striking the demand for a jury trial, and for an order directing that the case be tried without a jury, apparently for the reason, as argued by respondent, that appellants' defenses were equitable in their nature, and that the issues to be tried were equitable. The motion was argued to a judge presiding over a different department of the court than that to which the cause was later assigned for trial, and respondent's motion to strike the demand for jury trial was granted, an order being entered that the action should be tried as a nonjury case. To the entry of this order, appellants excepted, error being here assigned on the court's ruling.

Article I, § 21, of the constitution of this state provides that the right of trial by jury shall remain inviolate. This is a valuable right, jealously guarded by the courts. It may be assumed that respondent is correct in arguing that the constitutional guaranty of the right of trial by jury refers to the right as it existed at the time the constitution was adopted, and would not include actions which at the time of the adoption of the constitution were considered as equitable in their nature, or actions similar thereto.

The third amended complaint, upon which the cause was tried, alleges that appellants, by selling respond-

ent's logs to third parties, converted respondent's logs, to the latter's damage in a considerable sum. The complaint states a purely legal cause of action, sounding in tort for conversion, and demands money damages therefor. No equitable relief whatever is demanded by the complaint. The complaint indicates nothing of an equitable nature, save, possibly, the matter of such accounting as might be involved incidental to the ascertainment of damages caused by the alleged different conversions of respondent's logs. The complaint alleges no legal relationship between the parties to the action, save that created by the alleged conversions of respondent's logs, to recover damages for which the action was brought. No mutual accounts between the parties are referred to, and, save for the fact that a considerable number of conversions of logs are alleged, the cause of action stated is nowise complicated. The mere fact that a number of different conversions of logs were alleged could not result in changing a tort action for conversion into an action for an accounting.

The following cases support the general rule that an accounting in equity will not be granted in connection with a claim based on tort, merely because the claim consists of a number of items, and is therefore, to some extent, difficult to present to a jury. *United States v. Bitter Root Development Co.,* 200 U. S. 451, 50 L. Ed. 550, 26 S. Ct. 318; *Feeser, Inc. v. American Can Co.,* 2 Fed. Supp. 561; *Nashville, C. & St. L. R. Co. v. Jenkins & Sons,* 155 Tenn. 605, 296 S. W. 1, 53 A. L. R. 812; *Hudson v. Iguano Land & Mining Co.,* 71 W. Va. 402, 76 S. E. 797.

If the cause of action stated in the complaint is strictly legal in its nature, the fact that matters in the nature of an accounting may be incidentally involved in connection with the computation of damages, does

not change an action at law into an equitable accounting. *Carlisle Packing Co. v. Deming,* 62 Wash. 455, 114 Pac. 172; *Gatudy v. Acme Const. Co.,* 196 Wash. 562, 83 P. (2d) 889.

Even though it may be admitted that a court may be better able than a jury to deal intelligently with matters which are multifarious, though not individually complex, no case has been called to our attention in which a jury trial has been denied solely upon this basis, and, standing alone, such a situation will not require that a party to an action yield his constitutional right to a trial by jury. *United States v. Rathbone,* 27 Fed. Cas. 711; *McMartin v. Bingham,* 27 Iowa 234, 1 Am. Rep. 265; *McCalester v. National Reserve Life Ins. Co.,* 151 Kan. 378, 99 P. (2d) 758; *St. Paul & Sioux City R. Co. v. Gardner,* 19 Minn. 132, 18 Am. Rep. 334; *Nordeen v. Buck,* 79 Minn. 352, 82 N. W. 644; *McCabe & Co. v. Colleton Mercantile & Mfg. Co.,* 106 S. C. 25, 90 S. E. 161; *Monteith v. Harby,* 190 S. C. 453, 3 S. E. (2d) 250.

Clearly, respondent's complaint affords no justification for the denial of appellants' demand for a jury trial.

Respondent vigorously contends that appellants, by their answers, introduced a number of equitable defenses, and that equitable issues were thereby raised, rendering the action equitable in its nature, and triable to the court without a jury. If appellants' answers did introduce equitable issues which would cause the action to become predominantly equitable in its nature, then the ruling of the court that the action should be tried without a jury was correct. *Millett v. Pacific Cider & Vinegar Co.,* 151 Wash. 561, 276 Pac. 863; *Vickerman v. Kapp,* 167 Wash. 464, 9 P. (2d) 793. In the cases cited, the defendants asked affirmative relief.

Many other decisions of this court touch upon this question. A general rule applicable to the situation here presented is stated in 31 Am. Jur. 571, as follows:

"An equitable defense not involving affirmative equitable relief interposed in an action at law for a strictly defensive purpose does not change the character of the suit as an action at law or take away the right to a jury trial."

The rule is also stated in 35 C. J. 174, § 53, as follows:

"The interposition of an equitable defense to a legal cause of action does not convert the case into a suit in equity so as to deprive plaintiff of his right to a jury trial, nor does defendant by setting up an equitable defense lose his right to have any legal issues arising upon plaintiff's claim tried by jury. This rule, however, applies only to mere matters of equitable defense, for if the answer contains not merely a technical defense but an independent equitable cause of action constituting a cross demand in favor of defendant, the effect of which, if established, would extinguish plaintiff's cause of action, the issue taken thereon is triable by the court and not of right by a jury, and this is so whether issue is taken on the averments of the complaint or not; but the rule applies only where the answer or cross bill sets up an equitable defense or counterclaim, which, if true, destroys plaintiff's case; and, moreover, such answer must show a case entitling defendant to affirmative relief necessary to sustaining or ascertaining his rights."

A number of decisions of this court in which this rule was discussed were considered in the case of *Theodore v. Washington Nat. Inv. Co.,* 164 Wash. 243, 2 P. (2d) 649.

The affirmative defenses pleaded by appellants in their answers may be summarized as consent to, and ratification of, the disposition of the logs by respondent; waiver of the tort by respondent; estoppel by silence and by inducement; good faith on the part of Boyden and of appellants; payment in full; *res judicata;* and

finally, equitable estoppel. It would seem that only two of these defenses, both based upon alleged estoppels, can be classed as anywise equitable. By none of the defenses was any affirmative equitable relief sought; all of the defenses are strictly defensive in their nature. Concerning the defense of equitable estoppel, this court, in the case of *Bain v. Wallace,* 167 Wash. 583, 10 P. (2d) 226, said:

"As to the [equitable] estoppel pleaded by respondent, it is the law that such a plea, whether by answer or reply, does not necessarily convert an action from one at law to an equitable proceeding, triable only to the court. Where the question is doubtful, the right to a jury trial is always preserved."

The record discloses nothing which supports the order of the trial court striking appellants' demand for a jury trial, and directing that the action be tried to the court. The action was commenced strictly as a suit at law for damages based upon alleged conversion, and it was not changed by any of the pleadings into an equitable action not properly triable to a jury. As this court, in the case of *Bain v. Wallace, supra,* said, "Where the question is doubtful, the right to a jury trial is always preserved."

The matter of the right to a jury trial was considered by this court in the recent case of *Gatudy v. Acme Const. Co., supra,* in which the sole question presented was the propriety of the denial by the trial court of the plaintiff's demand for a jury trial. Previous decisions of this court were discussed and, notwithstanding the inconvenience which would necessarily result from a retrial of the action, the judgment was reversed because of error by the trial court in denying the motion for a trial by jury.

In the case at bar, respondent calls attention to the time devoted by the trial court to hearing the case at bar, and to the length of the record. While it is, of

course, true that a retrial will cause considerable labor and expense, that affords no reason for affirming an erroneous order of the superior court, by which appellants were denied a constitutional right which has always been protected by the legislature and by the courts.

The trial court, in denying appellants' demand for a jury trial, committed reversible error.

Several other questions are presented on this appeal which must be considered, notwithstanding the conclusion which we have reached as above stated.

Appellants assign error upon the refusal of the trial court to allow them, by summons and cross-complaint, to bring in H. S. Boyden as an additional defendant. If appellants were liable to respondent, Boyden, as a joint tort-feasor, would also be liable to respondent, and might be liable over to appellants for any sum in which appellants were required to respond in damages. Respondent, of course, had the right to sue one or more joint tort-feasors and not sue another. While it would seem that the trial court might well have allowed appellants to bring Boyden into the action by way of a summons and cross-complaint, particularly as the action was to be tried to the court as a nonjury case, in view of the fact that we hold that appellants' demand for a jury trial should not have been stricken, we leave this phase of the case to be determined by the trial court, in the exercise of its sound discretion, if the matter be again presented to the court for determination.

The next questions to be determined concern prior litigation carried on before the superior court for Snohomish county.

October 9, 1934, Boyden instituted cause No. 32983, an action against Eclipse Mill Company, a corporation, for the alleged conversion of 122,810 board feet of

logs, of which Boyden claimed ownership and the right of possession. It seems that Boyden had cut and removed from respondent's land the boom of logs which was the subject matter of the action, and that, during the month of June, 1934, the respondent company had sold the boom of logs to Eclipse Mill Company, by a contract warranting its title thereto. Several persons, claiming liens for labor performed on the logs, were made parties to the action, and after trial, by decree filed February 16, 1935, the rights of the lien claimants were established, and it was adjudicated that Boyden had authorized the sale of the logs to Eclipse Mill Company, and the payment of the purchase price thereof to the power company. It was also, by the decree, adjudged that Boyden was the owner of logs and timber still remaining on the power company's land. The power company was not a party to the action now under discussion, and the judgment did not purport to affect the power company's rights one way or another. In a memorandum opinion, the trial court stated, however, that the power company had carried the principal burden of the defense during the trial of the action. It was, of course, interested in the subject matter of the suit, because it had warranted the title to the logs which it had sold to the defendant Eclipse Mill Company.

June 8, 1935, Boyden instituted cause No. 33523, against the power company and its trustees, as individuals, and their respective wives, and Northwestern Securities Corporation, which, as above stated, held, as assignee, the contract between the power company and Boyden, appellant Snohomish River Boom Company being also named as a defendant. In this action, Boyden sought a judgment against the power company and its trustees, individually, and against the boom company, jointly and severally, for the value of

the boom of logs which the power company had sold to Eclipse Mill Company, and which was the subject matter of the action above referred to, and for other damages which Boyden claimed he had suffered as the result of the sale. The boom company was not served with process, and the judgment did not run against the boom company. Boyden also demanded judgment for the proceeds of the sale of certain other logs by the boom company, which proceeds were claimed by the power company, and also asked that his title to all timber cut or still standing on the power company's land be quieted, and that such timber be declared to be his (Boyden's) property, free and clear of any claim on the part of the defendants in the action. The action was tried on the complaint and on the answer and cross-complaints filed by Robert M. Watkins, as trustee in bankruptcy for the power company. The trial resulted in a judgment dismissing Boyden's action with prejudice, and granting Watkins, as trustee in bankruptcy for the power company, a recovery on his cross-complaint against Boyden in the sum of $7,742.50. It was also adjudged that the timber contract between Boyden and the power company "was terminated and became at an end on March 31, 1934, and ever since has had no force or effect," and

" . . . that the title, ownership and right to the sale and proceeds of any and all of said logs and timber removed from said premises since March 31, 1934, was and is in the said Great Northern Power Company and Colonel Robert M. Watkins, as trustee in bankruptcy for said corporation."

February 28, 1935, appellant Snohomish River Boom Company filed, in cause No. 33349, its complaint in interpleader, naming the power company and Boyden as defendants. The plaintiff alleged that it had sold logs to which both defendants claimed title. The plaintiff disclaimed all interest in the proceeds of the

logs, paid a portion of the money into court, tendered the balance when paid to it, and asked that the court determine the person entitled thereto. In the judgment entered in the interpleader action, it is stated that the interpleader action had been consolidated with cause No. 33523, and had been tried as a part thereof. In the judgment in the interpleader action, it was adjudged that Boyden had no right, title, or interest in or to the logs which the plaintiff boom company had sold; that the logs were the property of the power company and its trustee in bankruptcy; and that the money should be paid to the trustee.

Thereafter, this action was instituted by the trustee in bankruptcy against appellants as joint tort-feasors, seeking recovery of damages for conversions of logs removed from the power company's land by Boyden, and handled and disposed of by appellants subsequent to March 31, 1934.

In the course of the trial of the case at bar, the court held that the judgment entered by the superior court for Snohomish county, in cause No. 33523 (the action which Boyden had brought against respondents and its trustees, and against appellant boom company, and in which judgment was entered against Boyden and in favor of respondent, as hereinabove set forth), operated as *res judicata*, or estoppel by judgment, in this case, and refused to hold that the judgment of the Snohomish county court, in cause No. 32983 (the action brought by Boyden against Eclipse Mill Company, in which the court adjudged that Boyden was the owner of logs which he had cut, and which were still lying on the power company's land), was *res judicata* herein. Appellants assign error upon these rulings.

The decree entered in cause No. 32983 was entered prior to the entry of the decree in cause No. 33523.

As above stated, the power company was not a party to cause No. 32983, but appellants argue that, because it was, by the Eclipse Mill Company, tendered the defense of the action, and because respondent in fact assumed the defense of the action by its own counsel, it is bound by the judgment to the same extent as though it had been a party to the record. Respondent contends that the power company was not bound by the judgment. In our opinion, it is immaterial whether or not respondent was bound by the judgment referred to when rendered. For the purposes of this opinion, we shall assume without deciding that respondent was bound by the judgment.

Appellants argue that they were involved in the logging transaction only as agents for Boyden, and that an adjudication in favor of Boyden (who was their principal) and against respondent, upon the questions relating to the ownership of the logs, inures to appellants' benefit, and operates in their favor as *res judicata*, barring respondent from again litigating the same question against appellants. They also contend that if the principle of *res judicata* operates against the power company, the principle also operates against the trustee in bankruptcy.

It may well be that, had litigation between Boyden and the power company ceased with the judgment rendered in cause No. 32983, appellants in the case at bar could have successfully invoked against respondent the principle of *res judicata*. It appears, however, as above stated, that Boyden, by cause No. 33523, chose to relitigate directly with respondent his right to the logs which he had cut on respondent's land, that action (No. 33523) resulting in a judgment against Boyden, which judgment was entered after the rendition of the judgment in cause No. 32983, which Boyden had instituted against the Eclipse Mill Company.

The later judgment prevails. In 2 Freeman on Judgments (5th ed.), 1326, § 629, it is stated:

"Rights acquired by virtue of a judgment or decree are liable to be terminated in the same manner. Consequently though a matter has once been litigated to a final judgment if it is subsequently relitigated and adjudicated, the last judgment controls and determines the rights of the parties."

The rule is also supported by the following authorities: *Horse Creek Coal Land Co. v. Alderson*, 266 Fed. 477; *Citizens State Bank v. Snyder*, 181 Iowa, 11, 162 N. W. 6; *Borden v. McNamara*, 20 N. D. 225, 127 N. W. 104, Ann. Cas. 1912C, 841.

Whatever rights appellants, because of their relations with Boyden, might have claimed under the judgment which was rendered in Boyden's favor in cause No. 32983, such rights were only derivative of rights which Boyden acquired by that judgment. When Boyden thereafter elected to relitigate with respondent the issues which had been determined in his favor in the case referred to, and when judgment was entered against him in the latter case, the earlier judgment lost all further legal efficacy as between Boyden and respondent, and as between appellants, claiming through Boyden, and respondent. When a judgment has ceased to be legally effective as between the parties to the action in which the judgment was rendered, it cannot have any force and effect as between one of the parties to the action and strangers to the action.

There is nothing in the record before us which suggests that the judgment in cause No. 33523 was entered as the result of collusion between Boyden and respondent, or that that action was brought and tried by Boyden otherwise than in the utmost good faith and in

an honest attempt to procure a judgment in his favor against respondent.

We do not intend to suggest that appellants would necessarily be deprived of their defense in the nature of a plea of *res judicata*, by Boyden's failure to avail himself of the principle of *res judicata* in his second action, wherein he sued respondent directly. A mere personal waiver by Boyden, in the second action, of his right to avail himself of the former adjudication, might or might not inure to the prejudice of appellants in this action. In any event, however, a subsequent re-litigation of the question, such as Boyden waged in the suit against respondent, and the entry of an adverse final judgment on the merits, such as was entered in the action referred to, deprive appellants of any advantages which they may for a time have enjoyed pursuant to the first judgment.

The trial court did not err in refusing to hold that the judgment entered in cause No. 32983 operated as *res judicata*, or estoppel by judgment, in bar of this action.

We shall now consider the judgment above referred to, entered in cause No. 33523.

A judgment operates as *res judicata* equally as to parties thereto and their privies. *Symons v. Hutchinson*, 119 Wash. 430, 205 Pac. 1057; *Ainslie v. Moss*, 191 Wash. 625, 71 P. (2d) 679. One is in privity with a party when he stands in a mutual or successive relationship to the same rights of property. *Litchfield v. Goodnow*, 123 U. S. 549, 31 L. Ed. 199, 8 S. Ct. 210; *Fitzgerald v. Fitzgerald*, 97 Kan. 408, 155 Pac. 791; *Williams v. Barkley*, 165 N. Y. 48, 58 N. E. 765. See, also, *Withers v. Wabash R. Co.*, 122 Mo. App. 282, 99 S. W. 34; *State ex rel. National Subway Co. v. St. Louis*, 145 Mo. 551, 46 S. W. 981, 42 L. R. A. 113.

Appellants, in part at least, defend this action,

standing upon their right to deal with the logs on the basis that they acted under authority from Boyden, and that title to the logs was in him. They assert no title of their own, nor do they claim under any title other than that of Boyden. They must be regarded as standing in privity with Boyden, as to the logs in question, and being so in privity with him, the final judgment entered against Boyden in cause No. 33523, which he instituted and waged against respondent, and in which were presented, as between him and respondent, all issues concerning his title to the logs, operates as *res judicata* against appellants.

One asserting or defending a right by virtue of another's title to property is bound by a judicial determination on the merits, which is binding upon that other, to the effect that that person has no right, title, or interest in the property in question. This rule is frequently applied to deny to a successor in interest, who seeks to establish a derivative property right, the right to relitigate his grantor's, assignor's, or debtor's title to property. *Eakin v. McCraith*, 2 Wash. Ter. 112, 3 Pac. 838; *Isensee v. Austin*, 15 Wash. 352, 36 Pac. 394; *State ex rel. Olding v. Stampfly*, 69 Wash. 368, 125 Pac. 148; *Shaw v. Spokane Savings & Loan Soc.*, 129 Wash. 669, 225 Pac. 438; *Ainslie v. Moss, supra.*

This rule applies with equal force to the facts of the present case, where appellants seek to rely upon Boyden's title to defend against an alleged conversion of the logs on their part.

In the case of *Calkins v. Allerton*, 3 Barb. (N. Y.) 171, which was an action of trover for a pair of steers, the court said:

"He [the defendant] did not claim the cattle in his own right. He acted under the orders of Wheaton, who claimed title to the cattle. He took the cattle by Wheaton's command, and as his agent or servant. He justified the taking under Wheaton, and under his title.

Wheaton claimed title to the cattle under a purchase from the plaintiff. . . . I think, therefore, we must regard the defendant as a privy of Wheaton; and as he justifies under Wheaton, the former recovery against Wheaton must be deemed admissible evidence against him, and conclusive evidence of the plaintiff's title to the cattle, and of his right to the possession of the same."

In the case of *Mohr v. Langan,* 77 Mo. App. 481, an action for the conversion of household goods, it was held that a former judgment adjudicating the title to the goods in the present plaintiff as against Mrs. Smith, was *res judicata.* In the course of the opinion, the court said:

"Neither of the appellants claim any right to deal with the property except as the agent of Mrs. Smith, hence any evidence tending to defeat Mrs. Smith's title was admissible against any one defending thereunder. The relationship of appellants to Mrs. Smith . . . is virtually that of privies."

The case of *Hoppin v. Avery,* 87 Mich. 551, 49 N. W. 887, is to the same effect.

The adjudication that Boyden had no property rights in the logs necessarily binds all persons who seek to rely upon Boyden's title, whether for the purpose of asserting their own property interest therein, or in an attempt to justify their conduct relating thereto. Were the rule otherwise, a wrongdoer, by successively authorizing others to intermeddle with the property, could force the owner to repeatedly relitigate his title against the very same claim of ownership in the wrong-doer which was vainly asserted in the original action. The law does not contemplate the imposition of such a hardship on one who has procured a valid and binding adjudication of ownership of property. This phase of the problem was considered by the court in the case of *Hoppin v. Avery, supra,* wherein the court said:

"Although defendant here was not a party to that suit, his vendor was, and the vendee could not be permitted to retry the issue which had been disposed of adversely to his vendor in that litigation. Any other rule would involve the parties in endless litigation, for, in order to secure a retrial of the same issue, it would only be necessary to transfer the property."

When the fact of ownership or right of possession has been once judicially finally settled between two parties, that becomes a conclusive determination of their rights and the title or right to possession has become permanently adjudicated as between those parties and all who claim by, through, or under either of them. *Moore v. Richardson,* 100 Ill. App. 134, affirmed 197 Ill. 437, 64 N. E. 330; *Mohr v. Langan, supra.*

No error was committed by the trial court in holding that the judgment of the superior court of Snohomish county, entered in cause No. 33523, operates in the case at bar as *res judicata* against appellants, in so far as pertinent to the questions here presented.

Many other questions are argued, the industry of counsel having submitted over six hundred pages of briefs.

Appellants contend that the trial court erred in refusing to hold that respondent was barred from maintaining this action *ex delicto,* contending that, as to Boyden, the original trespasser, respondent had waived the tort, and by such waiver estopped itself from maintaining this action. We find no possible waiver as to Boyden, which could, as matter of law, afford any benefit to appellants. This action which respondent is waging against appellants is for alleged acts of conversion committed by appellants subsequent in time to the suit brought by Boyden against respondent. The trial court did not err in the particular contended for by appellants.

It is also contended that, because respondent

apparently attempted to state a cause of action *ex contractu* in the first three complaints filed herein, respondent is barred from maintaining an action *ex delicto,* as stated in the third amended complaint, on which the action was tried. Assuming without deciding that the first three complaints which respondent filed stated a cause of action *ex contractu,* respondent nevertheless had the right to change the form of the relief which it sought, by still another amended complaint, which the court permitted respondent to file. Appellants rely upon the rule laid down in 1 C. J. S. 1145, as follows: "One waiving a tort and suing in contract makes such a binding election of remedy as cannot be reconsidered."

We assume, for the purposes of argument, the very doubtful proposition that, under our liberal practice, the filing of a complaint stating one theory of a controversy, in the absence of any element of estoppel, constitutes such an election as to prevent a later filing of an amended complaint on another theory.

The very basis of the rule is, of course, that one, to be bound by an election of remedies, must, in fact, have available to him two or more remedies, between which he may choose. As stated by this court in the case of *Roy v. Vaughan,* 100 Wash. 345, 170 Pac. 1019,

"Before there can be an election of remedies, there must be two or more inconsistent remedies available to a party, any one of which he is at liberty to pursue."

See, also, *Batcheller, Inc. v. Welden Const. Co., ante* p. 392, 115 P. (2d) 696.

Appellants themselves forcefully argue that they cannot be held liable to respondent on any theory of implied contract, because appellants have neither retained the logs nor received any personal benefits from the sale thereof. Appellant Siler received no benefit from the transaction. It may be assumed that appel-

lant boom company collected its charges for booming the logs. It received no other benefit. *Greer v. Newland*, 70 Kan. 315, 78 Pac. 835; *Downs v. Finnegan*, 58 Minn. 112, 59 N. W. 981, 49 Am. St. 488; *Menefee Lumber Co. v. MacDonald*, 122 Ore. 579, 260 Pac. 444.

From appellants' argument and authorities, it would seem that respondent did not have two or more available remedies from which to elect. If the first complaint herein were in fact erroneously based on the theory of contract, the mistake in the availability of the remedy would not operate as an election so as to deprive respondent of the right to thereafter file an amended and proper complaint. *Roy v. Vaughan, supra; Godefroy v. Reilly*, 146 Wash. 257, 262 Pac. 639; *Spokane Security Finance Co. v. Crowley Lumber Co.*, 150 Wash. 559, 274 Pac. 102.

 Appellants also contend that the trial court erred in refusing to hold that, by suing for, and receiving and accepting, the proceeds of the sale of the 62,210 board feet of logs involved in case No. 33349 of the superior court for Snohomish county, respondent is estopped from maintaining this action *ex delicto*, and that the trial court also erred in refusing to hold that an equitable estoppel operated to bar respondent from maintaining this action.

As to the first argument, respondent, by proving that the power company rather than Boyden was entitled to the proceeds of logs held by the boom company in the interpleader suit, made no election of remedy which militates against the right to maintain this action. The boom company, which brought the suit in interpleader, was a disinterested stakeholder. The subject matter of the action was a specific fund held for the benefit of that party to the action who should show a superior right, regardless of the basis upon which the right was founded. No claim is made

in this action for any of the logs for which respondent recovered compensation in the interpleader suit. These logs were originally included in the third amended complaint, but the claim as to these logs was withdrawn at the beginning of the trial.

As to appellants' contention that respondent is barred by an equitable estoppel, it appears that appellants rely upon a letter, signed by an officer of the power company and addressed to the boom company, and upon a telegram sent by the power company to the boom company. We find in these documents nothing which operates as an estoppel against respondent.

Appellants contend that the trial court allowed respondent to recover excessive damages against appellants, whereas damages, if allowed at all, should have been compensatory merely. In this connection, appellants assert that Boyden's acts in cutting and removing timber from the power company's land, were committed in good faith, and not as a wilful or wrongful trespass.

This court has held that, in actions in trover, the measure of damages is the market value of the article at the time and place of conversion, with legal interest. *McSorley v. Bullock,* 62 Wash. 140, 113 Pac. 279; *Hetrick v. Smith,* 67 Wash. 664, 122 Pac. 363; *Hofreiter v. Schwabland,* 72 Wash. 314, 130 Pac. 364.

This action, however, was instituted against appellants, neither one of whom was a party to the original conversion, and who have themselves converted the property subsequent to an addition in value caused by the labor of the original converter. In such a situation, the general rule is that the measure of damages to be recovered from one in appellants' position shall be determined in view of the original conversion, whether the same was committed in good or in bad faith. If the original conversion was in *mala*

*fides,* then damages in an action against a subsequent converter should be based upon the market value of the property as of the time and place the defendant first exercised control and dominion over it, and this rule applies even though the subsequent converter is an innocent purchaser for value. *Wooden-Ware Co. v. United States,* 106 U. S. 432, 27 L. Ed. 230, 1 S. Ct. 398; *United States v. Perkins,* 44 Fed. 670; *Central Coal & Coke Co. v. John Henry Shoe Co.,* 69 Ark. 302, 63 S. W. 49; *Tuttle v. White,* 46 Mich. 485, 9 N. W. 528, 41 Am. Rep. 175.

If, on the other hand, the original conversion was inadvertent or unintentional, no bad faith existing, then a subsequent converter may be required to respond in damages based only upon the market value of the chattel at the time and place of the original conversion. *White v. Yawkey,* 108 Ala. 270, 19 So. 360, 54 Am. St. 159, 32 L. R. A. 199; *Foreman v. Holloway & Son,* 122 Ark. 341, 183 S. W. 763; *Whitney v. Huntington,* 37 Minn. 197, 33 N. W. 561; *Texas & N. O. R. Co. v. Executors of Jones,* 34 Tex. Civ. App. 94, 77 S. W. 955.

If appellants' contention, that Boyden's acts in converting the logs were in good faith, be well founded, then respondent may recover from appellants no more than stumpage value. If, on the other hand, Boyden's acts were in bad faith, the measure of respondent's recovery should be the market value of the logs at the time and place appellants converted them. The time and place of appellants' conversion are established by determining when and where they asserted dominion over the logs and disposed of them by sale, to respondent's prejudice.

In cause No. 33523, above referred to (Boyden v. Great Northern Power Co., *et al.*), tried to the superior

court for Snohomish county, the trial court entered a finding as follows:

"That after the expiration of said contract, to-wit: March 31, 1934, the plaintiff wrongfully and without right, and as a trespasser, in violation of the terms of said contract above mentioned, removed from the premises of the Great Northern Power Company one million feet of logs . . . ,"

and, in accordance with that finding, included in the judgment for damages allowed to respondent the amount by which the logs had been enhanced in value while under Boyden's control. This judgment is a judicial declaration that, as between Boyden, through whom appellants claim, and respondent, the latter owned the logs, which were enhanced in value by cutting, hauling, booming, etc. The judgment also includes a judicial determination that, in cutting the logs and in making the original conversion, Boyden did not act in good faith. Upon the record before us, it must be held that Boyden was not an innocent participant in an unintended conversion; that, in converting the logs, Boyden was not acting in good faith; and that appellants may not now limit their damages to the stumpage value of the logs, or to any amount other than the value of the logs at the time appellants converted the same. The trial court did not err in applying the measure of damages.

██ ██ Appellants contend that the trial court erred in rejecting the offered testimony of one George Startup, which appellants offered to support their affirmative defenses to the effect that at the time of the conversion, the logs lacked marketable title, and that respondent had already received full payment under the contract of sale. The evidence offered amounted to no more than that the logs in the possession of Boyden possessed a limited market value, because of Boyden's defective title. This evidence was irrelevant

on the question of the marketability of respondent's title, and the trial court did not err in excluding the offered evidence as to this issue.

Appellants also contend that respondent has already received full payment, and indeed overpayment, for the timber covered by the Boyden contract, and that respondent, for this reason, should, in equity and good conscience, be estopped from seeking any further recovery.

The superior court for Snohomish county, in cause No. 33523, definitely adjudicated that Boyden's rights under the logging contract terminated March 31, 1934. The logs and timber remaining on the land after this date were adjudged to be the power company's property. The contract itself so provided. Respondent may recover for any tortious interference with its logs thereafter committed. Such recoveries have no relationship to the Boyden contract, and are not shown to have in any way affected respondent's ownership or right to possession of the logs. There is no equitable doctrine which prevents respondent from suing any and all persons who have interfered with respondent's ownership and right to possession of the logs, merely because respondent may have received satisfaction for prior conversions, in an amount equal to or in excess of the contract price for the timber at one time agreed upon between the power company and Boyden. Prior payment is no defense to this action, and hence it was proper to exclude, as immaterial, Startup's testimony offered to prove such prior payment.

Appellants also contend that the trial court, while holding the judgment rendered by the superior court for Snohomish county in cause No. 33523 to be *res judicata,* refused to give the same effect to the finding of the court in that case as to the value of the logs,

but rendered judgment in the case at bar against appellants, based upon a higher value.

The fixing of damages as against Boyden in the Snohomish county case, for the particular logs which were the subject matter of that action, is not *res judicata,* either for or against appellants in the case at bar, for the reason that appellants were neither parties nor privies to that portion of the Snohomish county judgment. Appellants were, and are, not concerned with the adjudication of the amount of damages claimed by respondent by way of counterclaim in the action which Boyden instituted against respondent. That was a claim based upon a conversion by Boyden, not by appellants. Appellants are bound by the judgment, in so far as Boyden's right to the logs was adjudicated, but the judgment is not *res judicata* herein as to the amount of damages recovered by respondent in the action referred to.

Various other assignments of error are presented on this appeal. Some concern questions of fact, which will be determined by the trier of the fact upon a retrial of the action; others need not be discussed, as it is unlikely that they will arise upon the retrial.

The judgment appealed from is reversed, and the cause remanded for a new trial.

ROBINSON, C. J., SIMPSON, JEFFERS, and MILLARD, JJ., concur.